Opinion issued December 31, 2009
     













                                                         
          


In The
Court of Appeals
For The
First District of Texas




NO. 01-07-00520-CV




LEAANNE KLENTZMAN and CARTER PUBLICATIONS, INC. d/b/a
 THE WEST FORT BEND STAR, INC., Appellants

V.

WADE BRADY, Appellee





On Appeal from the 240th District Court
Fort Bend County, Texas
Trial Court Cause No. 03-CV-129531



 
O P I N I O N
          LeaAnne Klentzman (“Klentzman”) and Carter Publications, Inc. d/b/a The
West Fort Bend Star, Inc. (“the Star”) (together, “appellants”), bring this interlocutory
appeal complaining that the trial court erred in denying summary judgment relief in
a libel suit brought by appellee, Wade Brady (“Wade”). See Tex. Civ. Prac. & Rem.
Code Ann. § 51.014(a)(6) (Vernon 2008).


 In seven issues, appellants assert that (1)
Wade failed to produce more than a scintilla of probative evidence to raise a genuine
issue of material fact on the element of falsity, or, alternatively, appellants
conclusively negated the element of falsity by establishing the substantial truth of the
article; (2) Wade failed to produce more than a scintilla of probative evidence to raise
a genuine issue of material fact on the element of actual malice, or, alternatively,
appellants conclusively negated actual malice; and (3) a portion of the article was an
expression of opinion and not actionable as defamation. We affirm the denial of 
summary judgment.
 

Background
          Wade is the son of Craig Brady (“Chief Brady”), chief deputy sheriff for Fort
Bend County. The Star is a newspaper in Fort Bend County and Klentzman is one
of its reporters. From August 2001 through May 2002, the Star published a number
of opinion columns that included references to various incidents involving Chief
Brady’s sons, Wade and Cullen Brady, and Chief Brady’s actions relative to such
incidents or on behalf of his sons. None of those columns are the subject of the suit
underlying this appeal. Among the incidents described in the opinion columns were
the ticketing of Wade by sheriff’s deputies for a minor-in-possession of alcohol 
(“MIP”) charge,


 and the stop and detention of Cullen and Wade in their driveway by
a Department of Public Safety (“DPS”) trooper who had followed them to investigate
suspected erratic driving by Cullen. The opinion columns also described various
actions that Chief Brady had allegedly taken on behalf of his sons, including
conducting numerous tape-recorded meetings with the deputies who had been present
when Wade was ticketed for MIP in order to ask whether the deputies had been
“ugly” when ticketing Wade. 
          On January 15, 2003, the Star published an article, written by Klentzman,
entitled, “Deputy Brady’s tape collecting called ‘Roadside Suppression.’” This article
(“the Article”) is the subject of this suit. The Article: 
          ▪        stated that since November 21, 2002, Chief Brady had been
collecting audiotapes from deputies regarding Wade’s 2001 MIP
charge;
 
          ▪        recalled one of the incidents previously recounted in one of the
columns involving Wade’s report of a stolen cell phone and Chief
Brady’s pursuit of the man who had Wade’s cell phone;
 
          ▪        described testimony from the August 2002 trial of Wade’s MIP
charge regarding the circumstances leading up to the ticket;
          ▪        noted that MIP citations are not uncommon, but called Wade’s
unique because Chief Brady “continually made contact with the
officers involved,” stating that, “[a]ccording to officers, the issue
would have been moot if everything had just ended with the
ticket”; 
 
          ▪        recalled the audio-taped meetings that Chief Brady had held with
the deputies who issued the ticket, and described Chief Deputy
Brady’s conduct on the audiotapes as well as other details related
to the meeting, basing some of the details on testimony from the
August 2002 trial;            
 
          ▪        stated that “[p]ersonnel of the sheriff’s office [had] dubbed the
numerous twilight meetings [with the ticketing deputies] held in
various parking lots . . . to be ‘roadside suppression hearings,’
making jest of a legal maneuver by defense lawyers to keep
evidence out of court;”
           
          ▪        described the circumstances of one of these meetings, which
included the Sheriff’s participation;
 
          ▪        stated that “[d]uring this ‘Roadside Suppression Hearing’ another
incident with Wade and Cullen Brady was unfolding in [Chief
Brady’s] driveway,” namely, that “Brady’s sons had led a DPS
Trooper from the streets of Rosenberg winding down narrow
roads all the way to their riverside home”; 
 
          ▪        described that “in the DPS tape [of the stop] viewed by the Star
. . . Wade Brady was so unruly and intoxicated that the Trooper
had to handcuff him and place him the backseat of the police car
for safety”; and described other aspects of the stop based on the
Star’s review of the tape;
 
          ▪        stated that an order of expunction had been signed in a justice of
the peace court on November 21, 2002, but that there was “some
controversy over the validity of the order”; cited alleged text from
a statute requiring courts presiding over cases where a defendant
had been acquitted to enter an order of expunction within 30 days;
noted that the order was signed “59 days” late; and quoted a
lawyer who said that the order was void and that documents were
going to be filed to get the order set aside; 
 
          ▪        stated that Chief Deputy Brady had, since November 21, 2002, 
used the expunction order as legal authority to collect all the
audio-tapes of his meetings with those deputies who issued Wade
the MIP ticket; and cited Bud Childers, Fort Bend County
Attorney, as stating that Chief Brady could not legally use the
expunction order to confiscate the tapes from the deputies
because the tapes were outside of the scope of the order; 
 
          ▪        suggested that “it should be glaringly apparent why the officers
involved in the MIP incident with Wade Brady were intimidated
when their boss Chief Deputy Craig Brady notified them that he
had an order of expunction and demanded any and all audio tapes
or notes from the incident in their possession”; and stated that the
deputies had been ordered to turn over the tapes and had
complied, “feeling that they had no choice”;
 
          ▪        concluded with the statement that “[f]or now, the ‘Roadside
Suppression Hearings’ have ended with personnel at the sheriff’s
office just wondering when the other shoe will drop.” 
Procedural History
           Wade brought suit against appellants for libel


 and libel per se


 based on
statements in the January 15, 2003 article. He alleged that appellants published a
writing that injured his reputation by “omitt[ing] material facts and therefore
creat[ing] a misleading presentation of the factual circumstances regarding [his] trial
and the unrelated stop by the DPS trooper.” He asserted that “[m]any of the
statements in the [] article [had] no basis in fact and [were] nothing other than
deliberate lies,” that appellants knew that the writing was untrue, and that appellants
had made the writing with malice and the intent to cause him harm and injury. 
          Wade further alleged that appellants had portrayed him “as engaging in
criminal activity,” thus subjecting themselves to a claim of libel per se. As to the
libel per se claim, Wade asserted that an ordinary person would have drawn a
reasonable conclusion from the article that he had committed a criminal act, namely,
that he had “engaged in a violation of the minor in possession statute, circumvented
Texas law, and was the beneficiary of acts of official oppression.”
          Appellants filed a general denial answer and asserted a number of defenses,
including that the statements were not materially false and were true or substantially
true; some of the statements were non-actionable opinion, rhetoric, or hyperbole;
some of the statements were privileged under Texas Civil Practice and Remedies
Code sections 73.002(b)(1) and (2); and Wade was a limited purpose public figure
thus requiring appellant to prove that the statements were published with
constitutional actual malice, which appellants did not do. 
          Appellants filed a motion for summary judgment, which the trial court granted
in part and denied in part.


 About eighteen months later, appellants filed a second
motion for summary judgment, the denial of which gave rise to this appeal. In their
second motion for summary judgment, appellants asserted that:
          ▪        Wade was a limited purpose public figure as a matter of law and
so had the burden to show that the speech at issue was false;
 
          ▪        Conversely, on summary judgement, a showing of substantial
truth by the defendant precludes liability; 
 
          ▪        As a limited purpose public figure, Wade had to prove the speech
was published with actual malice, not just negligence; and
 
          ▪        appellants negated actual malice as a matter of law through
attached affidavits.

          Appellants then argued that they were entitled to summary judgment as a
matter of law on the following “traditional”


 grounds:
          (1)     “The Article and the statements complained of by [Wade] are true
or substantially true as a matter of law, thus negating an essential
element of [Wade’s] cause of action;
 
          (2)     “[Wade] is a limited purpose public figure”; 
 
          (3)     As a matter of law, [appellants] did not publish the Article with
actual malice; and
 
          (4)     “The statement in the Article, ‘[i]n the DPS videotape viewed by
the Star and then later obtained through the Freedom of
Information Act, Wade Brady was so unruly and intoxicated that
the Trooper had to handcuff him and place him in the backseat of
the police car for safety,’ is opinion and, therefore non-actionable
under Texas law.’” 
 
          Appellants also argued that they were entitled to summary judgment on the
following “no-evidence”


 grounds, asserting the want of evidence “of the following
elements of [Wade’s] defamation cause of action”: 
          (1)     material falsity; and
          (2)     actual malice.
          The second motion for summary judgment was heard by an associate judge
who issued an order denying the motion on both its traditional and no-evidence
summary judgment grounds.


 The associate judge’s order also included a statement
that “[t]he Court further finds that Plaintiff Wade Brady is not a limited purpose
public figure and is, therefore, not required to demonstrate actual malice to prevail
on his claims at trial.” 
          Appellants appealed the associate judge’s decision to the district court,
requesting a de novo hearing.


 In that appeal, appellants complained that the
associate judge had erred as a matter of law for the reasons set forth in the second
motion for summary judgment, including (1) “failing to properly apply the substantial
truth doctrine in determining [appellants’] traditional summary judgment motion with
respect to the affirmative defense of truth, and with respect to [appellants’] no-evidence summary judgment motion with respect to material falsity, an essential
element of [Wade’s] claim for relief”; (2) “failing to properly apply the limited
purpose public figure doctrine” by failing to determine that Wade was a limited
purpose public figure; and (3) “failing to apply the constitutional actual malice
standard” and failing to determine, as a matter of law, “that actual malice was negated
by [appellants] and [Wade] failed to raise a genuine issue of material fact on the
existence of actual malice.” Appellants did not refer to their fourth traditional
summary judgment ground that had asserted that a particular statement in the article
regarding the DPS videotape was a matter of opinion and so not actionable. 
          The district court, after holding a de novo hearing, issued an order affirming
the associate judge’s denial of [appellant’s] second motion for summary judgment.


 
The decretal portion of the district court’s order read, in relevant part,



          After considering [the] issues [as recited in appellants’ motion]
raised on appeal de novo, based on the record and oral argument, the
Court AFFIRMS the Associate Judge’s Order entered March 7, 2007
with respect to the issues appealed by [appellants] and hereby DENIES
[appellants’ second motion for summary judgment] on the issues raised
on appeal as follows:
 
(A)[Appellants] have not sustained their burden of
establishing the affirmative defense of substantial truth and
therefore their conventional motion on the affirmative
defense of substantial truth is DENIED.
 
          (B)    [Wade] has raised a question for the trier of fact on the
issue of material falsity and, therefore, [appellants’] no
evidence motion on this point is DENIED; 
 
          (C)    The Court holds that [Wade] is not a limited purpose public
figure as a matter of law and, therefore, is not required to
demonstrate actual malice to prevail on his claims;
therefore, Defendants’ conventional motion on the issue of
negating actual malice and Defendants’ no evidence
motion on the issue of actual malice are DENIED as
moot[.]
          Appellants bring an interlocutory appeal from this order.


 
Standard of Review
          We review a trial court’s decision to grant or to deny a motion for summary
judgment de novo. See Tex. Mun. Power Agency v. Pub. Util. Comm’n of Tex., 253
S.W.3d 184, 192, 199 (Tex. 2007) (citing rule for review of grant of summary
judgment and reviewing denied cross-motion for summary judgment under same
standard). When reviewing the denial of summary judgment, we apply the same well-known standards applicable to the granting of summary judgment. Harvest House
Publishers v. Local Church, 190 S.W.3d 204, 209 (Tex. App.—Houston [1st Dist.]
2006, pet. denied) (citing Associated Press v. Cook, 17 S.W.3d 447, 451 (Tex.
App.—Houston [1st Dist.] 2000, no pet.)). Defamation cases are reviewed under the
same summary judgment standards as other cases even though constitutional
considerations are involved. See Casso v. Brand, 776 S.W.2d 551, 556–57 (Tex.
1989); Galveston Newspapers, Inc. v. Norris, 981 S.W.2d 797, 799 (Tex.
App.—Houston [1st Dist.] 1998, pet. denied). 
          A motion for summary judgment must stand or fall on the grounds expressly
presented in the motion, McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d 337,
341 (Tex. 1993), and a trial court may not grant summary judgment on a ground not
presented by the movant in writing. City of Houston v. Clear Creek Basin Auth., 589
S.W.2d 671, 677 (Tex. 1979). Likewise, on appeal, the issues reviewed by the
appellate court “must have been actually presented to and considered by the trial
court.” Travis v. City of Mesquite, 830 S.W.2d 94, 100 (Tex. 1992). An appellate
court should consider all the grounds for summary judgment ruled on by the trial
court that were preserved by the movant and are necessary for final disposition of the
appeal; an appellate court may consider, in the interest of justice, grounds that the
movant preserved for review and on which the trial court did not rule. Cincinnati Life
Ins. Co. v. Cates, 927 S.W.2d 623, 626 (Tex. 1996).
          Under the traditional summary judgment standard, the movant has the burden
to show that no genuine issues of material fact exist and that it is entitled to judgment
as a matter of law. Tex. R. Civ. P. 166a(c); Nixon v. Mr. Prop. Mgmt. Co., Inc., 690
S.W.2d 546, 548 (Tex. 1985). In deciding whether there is a disputed material fact
issue precluding summary judgment, evidence favorable to the non-movant will be
taken as true, and every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. Nixon, 690 S.W.2d at 548–49. A
defendant moving for a traditional summary judgment must conclusively negate at
least one essential element of each of the plaintiff’s causes of action or conclusively
establish each element of an affirmative defense. Sci. Spectrum, Inc. v. Martinez, 941
S.W.2d 910, 911 (Tex. 1997). After a defendant has done so, the burden then shifts
to the plaintiff to produce evidence creating a fact issue on the element or defense in
order to defeat the summary judgment. See Walker v. Harris, 924 S.W.2d 375, 377
(Tex. 1996).  
          A motion for no-evidence summary judgment is essentially a directed verdict
granted before trial, to which we apply a legal-sufficiency standard of review. King
Ranch, Inc. v. Chapman, 118 S.W.3d 742, 750–51 (Tex. 2003). In general, a party
seeking a no-evidence summary judgment must assert that no evidence exists as to
one or more of the essential elements of the non-movant’s claims on which the
non-movant would have the burden of proof at trial. Flameout Design & Fabrication,
Inc. v. Pennzoil Caspian Corp., 994 S.W.2d 830, 834 (Tex. App.—Houston [1st
Dist.] 1999, no pet.). Once the movant specifies the elements on which there is no
evidence, the burden shifts to the non-movant to raise a fact issue on the challenged
elements. Tex. R. Civ. P. 166a(i). If the non-movant produces more than a scintilla
of probative evidence to raise a genuine issue of material fact, a no-evidence
summary judgment is improper. Id.; Forbes, Inc. v. Granada Biosci., Inc., 124
S.W.3d 167, 172 (Tex. 2003). More than a scintilla of evidence exists if the evidence
would allow reasonable and fair-minded people to differ in their conclusions. Forbes,
124 S.W.3d at 172. A no-evidence summary judgment is properly granted when (1)
there is a complete absence of evidence of a vital fact, (2) the court is barred by rules
of law or of evidence from giving weight to the only evidence offered by the non-movant to prove a vital fact, (3) the evidence offered by the non-movant to prove a
vital fact is no more than a scintilla, or (4) the non-movant’s evidence conclusively
establishes the opposite of a vital fact. See King Ranch, 118 S.W.3d at 751. As with
a traditional summary judgment, a reviewing court must view the evidence in the light
most favorable to the non-movant. Id. 
          When a party seeks both a traditional and a no-evidence summary judgment,
we first review the trial court’s decision regarding summary judgment under the no-evidence standards of Rule 166a(i); if the non-movant failed to produce more than a
scintilla of evidence raising a genuine issue of fact on the challenged elements of his
claim, there is no need to analyze whether the movant met his burden on his motion
for traditional summary judgment. Ford Motor Co. v. Ridgeway, 135 S.W.3d 598,
600 (Tex. 2004). 


Fault, Falsity, and Substantial Truth 
in Libel Cases involving Media Defendants

          Generally, to prevail on a cause of action for libel against a media defendant,
a plaintiff must prove that the defendant (1) published a statement (2) that was
defamatory concerning the plaintiff (3) while acting with actual malice, if the plaintiff
was a public official or public figure, or while acting with negligence, if the plaintiff
was a private individual, regarding the truth of the statement. WFAA-TV, Inc. v.
McLemore, 978 S.W.2d 568, 571 (Tex. 1998). 
          The third requirement relates to a showing of fault on the part of the media
defendant, which is a constitutional prerequisite for defamation liability. Id. As to
this requirement, the public plaintiff must prove, by clear and convincing evidence, 
that the media defendant published the statement with “actual malice,” that is, “made
with knowledge of [the statement’s] falsity or with reckless disregard for the truth.” 
See Gertz v. Robert Welch, Inc., 418 U.S. 323, 342, 94 S. Ct. 2997, 3008 (1974). The
private individual need prove only negligence on the part of the media
defendant—that is, he must show that the defendant knew or should have known that
the defamatory statement was false—in order to recover actual damages. See
McLemore, 978 S.W.2d at 571; Foster v. Laredo Newspapers, Inc., 541 S.W.2d 809,
819 (Tex. 1976). However, when the defamatory statement involves a matter of
public concern, a private individual must meet the higher standard of proving actual
malice in order to recover any presumed or punitive damages against a media
defendant. Gertz, 418 U.S. at 349, 94 S. Ct. at 3011 (holding, when defamatory
statement involved issue of public concern, that private individual was required to
prove actual malice to recover presumed or punitive damages against media
defendant); Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc. 472 U.S. 749, 761,
105 S. Ct. 2939, 2946 (1985) (clarifying that Gertz does not apply when statement
involves no issue of public concern).
          Both standards of fault—negligence and actual malice—inherently incorporate 
the notion of falsity. See Foster, 541 S.W.2d at 819 (explaining that plaintiff must
show that defendant “knew or should have known that the defamatory statement was
false”) (emphasis added); Gertz, 418 U.S. at 328, 94 S. Ct. at 3002 (defining actual
malice as “with knowledge that [the statement] was false or with reckless disregard
of whether it was false or not.”) (emphasis added). Under the common law, the
falsity of the defamatory statement is presumed and the defendant bears the burden
of proving the statement true. Philadelphia Newspapers, Inc. v. Hepps, 475 U.S. 767,
776–77, 106 S. Ct. 1558, 1563–64 (1986). However, when a defamation suit is
brought against a media defendant and involves an issue of public concern, the
constitutional requirements of the First Amendment supersede the common law
presumption of falsity, and the plaintiff—whether a public plaintiff or a private
individual—is required to prove the falsity of the challenged statement by a
preponderance of the evidence before recovering any damages. See id. at 775–76,
106 S. Ct. at 1563 (noting that public figure plaintiffs are required to show falsity and
then holding in regard to private individuals that “the common law’s rule on
falsity—that the defendant must bear the burden of proving truth—must similarly fall
here to a constitutional requirement that the plaintiff bear the burden of showing
falsity, as well as fault, before recovering damages.”); Bentley v. Bunton, 94 S.W.3d
561, 587 (Tex. 2002) (noting that falsity need be proven only by a preponderance of
the evidence). 
          Whether or not a particular plaintiff is required to prove the falsity of the
challenged statement, a defendant may assert truth as a defense to a libel action. See
Tex. Civ. Prac. & Rem. Code Ann. § 73.005 (Vernon 2005); Randall’s Food Mkts.,
Inc. v. Johnson, 891 S.W.2d 640, 646 (Tex. 1995). The truth of a statement is an
absolute defense to a claim for defamation. See Hurlbut v. Gulf Atl. Life Ins. Co., 749
S.W.2d 762, 766 (Tex. 1987). A defendant cannot be liable for presenting a true
account of events, regardless of what someone may infer from the account. Turner
v. KTRK Television, Inc., 38 S.W.3d 103, 115 (Tex. 2000). A true account is not
actionable—regardless of the conclusions that people may draw—so long as it does
not create a substantially false and defamatory impression by omitting material facts
or suggestively juxtaposing them in a misleading way. Id. at 115, 118. 
          However, “literally or substantially true” facts which are “published in such a
way that they create a substantially false and defamatory impression by omitting
material facts or juxtaposing facts in a misleading way” are actionable as defamation. 
Id. at 115. Therefore, a defendant who “gets the details right but fails to put them in
the proper context and thereby gets the story’s ‘gist’ wrong” may be held liable for
defamation. Id. Whether a publication is false depends on “a reasonable person’s
perception of the entirety of a publication and not merely on individual statements.” 
 Id.
          Conversely, liability is precluded when a defendant “correctly conveys a story’s
‘gist’ or ‘sting’ although erring in the details.” Id. This is known as the “substantial
truth” doctrine. Id. Courts use the “substantial truth” test to determine whether a
statement is false. Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 516–17, 111
S. Ct. 2419, 2433 (1991); McIlvain v. Jacobs, 794 S.W.2d 14, 15–16 (Tex. 1990). 
Under this doctrine, “minor inaccuracies do not amount to falsity so long as ‘the
substance, the gist, the sting’” of the charge is justified. Masson, 501 U.S. at 517,
111 S. Ct. at 2433. A statement is substantially true, and thus not actionable, if, in the
mind of the average person who reads the statement, the allegedly defamatory
statement is not more damaging to the plaintiff’s reputation than a truthful statement
would have been. McIlvain, 794 S.W.2d at 16. This determination requires looking
at the “gist” of the statement and, when the underlying facts as to the gist of the
libelous charge are undisputed, disregarding any variance regarding items of
secondary importance and determining substantial truth as a matter of law. Id. If a
defendant establishes, as a matter of law, the substantial truth of the statements of
which a plaintiff complains, this will defeat the defamation claim and the defendant
will be entitled to summary judgment. McIlvain, 794 S.W.2d at 15. Analysis
          Appellants present seven issues on appeal. Their first is a broad issue
questioning whether the trial court erred in denying appellants’ motion for summary
judgment and in not rendering a take-nothing summary judgment against Wade. 
Although we recognize that such a broad issue is authorized,


 an appellant must
nevertheless also present argument and supporting authorities in support of that issue. 
See McCoy v. Rogers, 240 S.W.3d 267, 272 (Tex. App.—Houston [1st Dist.] 2007,
pet. denied). Consequently, we review the arguments actually raised and briefed on
appeal. See Tex. R. App. P. 38.1(f), 38.9; McCoy, 240 S.W.3d at 272. Appellants
brief all their issues in a single argument section (with various subtitles), raising
arguments relating to (1) falsity and substantial truth (issues two and three), (2) actual
malice and Wade’s status as a limited-purpose public figure (issues four, five, and
six), and (3) statements as non-actionable opinion (issue seven).
A.      Falsity and substantial truth
          In their second issue, appellants assert that there is “no evidence, or insufficient
evidence, that the Challenged Statements in the Article are false” and in their third
issue, they aver that “the evidence establishes as a matter of law that the Challenged
Statements in the Article are not false and are, in fact, substantially true.”



Considering such issues in light of the grounds presented in appellant’s second
summary judgment motion and their appeal to the district court, and the district
court’s ruling on the same, appellants raise in these issues the following legal
challenges to the trial court’s ruling: 
          ■        Appellants were entitled to a no-evidence summary judgment
because Wade failed to raise a genuine issue of material fact on
the essential element of falsity; and
 
          ■        Appellants were entitled to a traditional summary judgment
because they showed that no genuine issue of material fact exists
and they conclusively negated the essential element of falsity or
conclusively established their affirmative defense that the
challenged statements in the Article were “substantially true.” 
 
          We first note that both parties agree that Wade was required to prove the falsity
of the complained-of article, so we assume, without deciding, that falsity is an
essential element of Wade’s cause of action.


 Both parties also refer us to the
“substantial truth” doctrine as the basis for making a determination regarding the truth
or falsity of the Article, and contend that a determination of “falsity” depends on
whether the “gist” of the publication is substantially true or, conversely, whether it
creates a substantially false and defamatory impression. See Turner, 38 S.W.3d at
115. Both parties also discuss Wade’s burden to raise a genuine issue of material
fact and appellant’s burden to conclusively establish their affirmative defense of
substantial truth in light of the “gist” of the Article. We begin then by considering
the “gist” of the Article. 
          1.       The “gist” of the Article
          Appellants argue that, even if particular underlying statements in the Article
are inaccurate, the “gist” of the Article is nevertheless substantially true. See Masson,
501 U.S. at 517, 111 S. Ct. at 2433. They contend that the “gist” of the Article was
that “Chief Deputy Brady repeatedly contacted, in an unusual and atypical manner,
the deputies that issued [Wade] a ticket and subsequently circulated an expunction
order to round up clandestine audiotapes of those meetings.”
          Wade argues that, even if particular underlying statements in the Article are
literally true, the “gist” of the Article is false because, through omission of material
facts, it creates a substantially false impression. See Turner, 38 S.W.3d at 115. He
asserts that the “gist” of the Article is that Wade “was using his Father to ‘suppress’
the justice system” and that “the meetings between [Chief Brady] and the Deputies
were for the purpose of ‘roadside suppression’ of evidence of [Wade’s] guilt for
minor in possession.” Wade contends that the Article paints a picture of Wade and
his brother as “a sort of drunken ‘Dukes of Hazard’ tandem who are fortunate enough
to have Fort Bend County’s version of ‘Boss Hogg’ as their Father to put the ‘fix’ on
the system.” 
          We construe the Article “as a whole in light of the surrounding circumstances
based upon how a person of ordinary intelligence would perceive it.” See id. at 114. 
“Falsity for constitutional purposes depends upon the meaning a reasonable person
would attribute to a publication, and not to a technical analysis of each statement.” 
New Times, Inc. v. Isaacks, 146 S.W.3d 144, 154 (Tex. 2004).
          We first observe that the heading of the Article is “Deputy Brady’s tape
collecting called ‘Roadside Suppression.’” The target of the Article is Chief Brady
and the subject of the Article, albeit with many extraneous details and digressions, is
the alleged demand by Chief Brady for deputies to turn over certain audiotapes and
the propriety of such alleged action. To the extent that the Article addresses Wade’s
incidents with the law, the emphasis is on Wade’s father’s reaction to those incidents,
and not on Wade. Construing the Article as a whole, in light of the surrounding
circumstances and based upon how a person of ordinary intelligence would perceive
it, we conclude that the gist of the Article is that Chief Brady, in an effort to help his
son, Wade, abused his official position by intervening on his son’s behalf in an effort
to “suppress” evidence, specifically, by intimidating and coercing the deputies who
issued Wade a ticket and illegally demanding and requiring them to turn over to him
audiotapes related to the incident. Although many details regarding Wade’s
encounters with law enforcement appear in the Article, the “gist” of the Article is not
Wade’s alleged misdeeds; Wade is a secondary character, portrayed as the beneficiary
of his father’s purportedly improper actions, whose dealings with the law provided 
the catalyst for his father’s alleged misconduct.



          2.        Did Wade meet his burden in the no-evidence summary judgment
proceeding to raise a genuine issue of material fact on the
essential element of falsity?
 
          In order to avoid a no-evidence summary judgment on the issue of falsity,
Wade was required to present more than a scintilla of evidence to raise a genuine
issue of material fact as to whether the “gist” of the Article was false, that is, whether
the “gist” created a “substantially false and defamatory impression.” Forbes, 124
S.W.3d at 172; Turner, 38 S.W.3d at 115. Wade, therefore, was required to present
evidence which “would allow reasonable and fair-minded people to differ in their
conclusions” as to whether the “gist” of the Article created a substantially false and
defamatory impression. See Forbes, 124 S.W.3d at 172; Turner, 38 S.W.3d at 115.
          Contrary to appellants’ assertions, the facts underlying the “gist” of the Article
are not uncontested. Wade’s summary judgment evidence included affidavits from
all three deputies who were involved in issuing the ticket to Wade, in which the
deputies specifically deny the claims of intimidation and coercion on the part of Chief
Brady that underlie the “gist” of the Article. There was also deposition evidence from
the deputies before the trial court (attached to appellant’s motion for summary
judgment) and an affidavit from the Fort Bend County Attorney that contradict
various assertions in the Article—and the impression that they convey—regarding the 
Chief Brady’s alleged demands for the audiotapes, the propriety of any demands and
the legal scope of the expunction order, and the means and reasons for the deputies’
compliance with the expunction order. The deputies’ affidavits and deposition
excerpts, along with the transcript of an audiotape referenced in the article, also
provide evidence that Chief Brady specifically told the deputies—at one of the
meetings that the Article dubs a “Roadside Suppression Hearing”—that writing the
MIP ticket was “not a problem,” that they should proceed forward with Wade’s case
and “do the whole thing,” and that a jury trial on the ticket would be a good learning
experience for Wade, whom Chief Deputy Brady had recently caught drinking.


 The
Article omits any reference to this portion of the audiotape that directly contravenes
the Article’s “gist” that Chief Deputy Brady was trying to “suppress” evidence for
Wade’s benefit and intimidate or coerce the deputies regarding the ticket given to
Wade.  
          This evidence would allow reasonable and fair-minded people to differ in their
conclusions as to whether Chief Brady abused his official position by intimidating
and coercing the deputies in an improper effort to “suppress” evidence in order to
help Wade. Accordingly, we hold that Wade presented more than a scintilla of
evidence to raise a genuine issue of material fact as to whether the “gist” of the
Article was false, and therefore appellants were not entitled to a no-evidence
summary judgment on the essential element of falsity. See Forbes, 124 S.W.3d at
172; Turner, 38 S.W.3d at 115. 
          3.       Did appellants meet their traditional summary judgment burden
to show that no genuine issue of material fact exists and to
conclusively negate the essential element of falsity or
conclusively establish their affirmative defense that the
challenged statements in the Article were “substantially true”?
 
          As we have held that Wade raised a genuine issue of material fact on the
essential element of falsity, it necessarily follows that appellants did not establish that
“there was no genuine issue of material fact” and conclusively negate the essential
element of falsity so as to be entitled to a traditional summary judgment on that
ground. See Tex. R. Civ. P. 166a(c); Sci. Spectrum, 941 S.W.2d at 911.
          Appellants nevertheless argue that they were entitled to summary judgment
because they conclusively established the Article’s substantial truth by showing that
its gist is not more damaging to Wade’s reputation in the mind of the average reader
than the truth. See McIlvain, 794 S.W.2d at 16. However, taking the evidence on
summary judgment that is favorable to Wade as true, indulging every inference in his
favor, and resolving any doubts in his favor, Nixon, 690 S.W.2d at 548–49, we
conclude that the evidence establishes that Chief Brady did not intimidate or coerce
the deputies in an effort to improperly “suppress” evidence in order to help Wade. 
This evidence, which we must presume to be true, is directly contrary to the gist of
the Article, which gives an average reader the impression that Wade was the
beneficiary of, and reason for, Chief Brady’s abuse of his public position through
intimidation, coercion, and improper “suppression” of evidence. We cannot conclude
that this gist is not more harmful to Wade’s reputation in the mind of the average
reader than the presumed truth that Wade was not the beneficiary of, nor the catalyst
for, any official misconduct on the part of Chief Brady because no such intimidation,
coercion, or improper “suppression” of evidence for Wade’s benefit ever took place. 
Appellants therefore have failed to conclusively establish that the gist of the Article
was not more damaging to Wade’s reputation in the mind of the average reader than
the truth. Furthermore, even if appellants had established a right to summary
judgment on the basis of substantial truth, because the underlying facts regarding the
alleged intimidation, coercion, and “suppression” of evidence are disputed, a material
issue of fact exists on the issue of substantive truth precluding summary judgment. 
See Tex. R. Civ. P. 166a(c); see also Cram Roofing Co., Inc. v. Parker, 131 S.W.3d
84, 90 (Tex. App.—San Antonio 2003, no pet.) (holding, in regard to substantial truth
defense, that “[o]bviously, if the underlying facts [regarding the “gist” of the
statement] are disputed, then a fact issue arises.”) .
          We conclude that appellants did not meet their burden to (1) establish that no
genuine issue of material fact exists and (2) to either conclusively negate falsity or
conclusively establish the substantial truth of the Article. See Tex. R. Civ. P. 166a(c);
Sci. Spectrum, 941 S.W.2d at 911. We therefore hold that appellants were not entitled
to a traditional summary judgment on the element of falsity or on their defense of
substantial truth.    
          We overrule appellants’ second and third issues. 

B.      Actual malice and Wade’s status as a limited purpose public figure
          In their fourth and fifth issues, appellants assert that they established as a
matter of law that Wade is a limited purpose figure required to prove that the Article
was published with actual malice, and that there was “no evidence, or insufficient
evidence,” of actual malice before the court on summary judgment. In their related
sixth issue, appellants argue that they established, as a matter of law, that the Article
was published without actual malice. Considering such issues in light of the grounds
presented in appellant’s second summary judgment motion and their appeal to the
district court, and the district court’s ruling on the same, appellants raise in these
issues the following legal challenges to the trial court’s ruling: 
          ■        Appellants established as a matter of law that Wade was a limited
purpose public figure and thus the trial court erred in declaring
otherwise and ruling that actual malice was not an essential
element of Wade’s cause of action; and 
 
          ■        because Wade was a limited purpose public figure and was
therefore required to prove actual malice as an essential element
of his cause of action, appellants were entitled to a no-evidence
summary judgment because Wade failed to raise a genuine issue
of material fact on the essential element of actual malice; and
 
          ■        because Wade was a limited purpose public figure and was
therefore required to prove actual malice as an essential element
of his cause of action, appellants were entitled to a traditional
summary judgment because they showed that no genuine issue of
material fact exists and they conclusively negated the essential
element of actual malice. 
          Public figures suing a media defendant for defamation must prove that the
defendant published the statement with “actual malice.”


 See Gertz, 418 U.S. at 342, 
94 S. Ct. at 3008. In determining whether a particular plaintiff must prove actual
malice, the court must look at the “the character of the defendant” as a private or
public figure, rather than the nature of the subject-matter at issue. See Time, Inc. v.
Firestone, 424 U.S. 448, 453, 455–56, 96 S. Ct. 958, 965, 966 (1976). It is not
enough that a plaintiff is involved or associated with a matter of public or general
interest, no matter how significant or sensational. Id. at 454, 96 S. Ct. at 965;
Wolston v. Reader’s Digest Ass’n, Inc., 443 U.S. 157, 167, 99 S. Ct. 2701, 2707
(1979). “A private individual is not automatically transformed into a public figure
just by becoming involved in or associated with a matter that attracts public attention”
or is newsworthy. Wolston, 443 U.S. at 167, 99 S. Ct. at 2707.
          There are two classes of “public figures”: (1) general-purpose public figures,
who are individuals who “achieve such pervasive fame or notoriety that [they]
become[] public figure[s] for all purposes and in all contexts;” and (2) limited-purpose public figures, who are persons who “thrust themselves to the forefront of
particular public controversies in order to influence the resolution of the issues
involved. . . . inviting attention and comment,” who “inject[] [themselves] or [are]
drawn into a particular public controversy . . . . assum[ing] special prominence in the
resolution of public questions,” “thrusting [themselves] into the vortex of [a] public
issue . . . [or] engag[ing] the public’s attention in an attempt to influence its
outcome.” Gertz, 418 U.S. at 345, 351, 352, 94 S. Ct. at 3009, 3012, 3013. Whether
a person is a public figure is a question of law for the court to decide. Rosenblatt v.
Baer, 383 U.S. 75, 88, 86 S. Ct. 669, 677 (1966)).
          To determine whether a person is a limited-purpose public figure, Texas courts
apply a three-part test:
(1)     the controversy at issue must be public both in the sense that
people are discussing it and people other than the immediate
participants in the controversy are likely to feel the impact of its
resolution;
 
(2)     the plaintiff must have more than a trivial or tangential role in the
controversy; and
 
(3)     the alleged defamation must be germane to the plaintiff’s
participation in the controversy.
 
McLemore, 978 S.W.2d at 571–72 (adopting test from Trotter v. Jack Anderson
Enters., Inc., 818 F.2d 431, 433 (5th Cir. 1987)). 
          To determine whether a public controversy existed and its scope, a court must
examine “whether persons actually were discussing some specific question.”
McLemore, 978 S.W.2d at 572. “A general concern or interest will not suffice,” id.; 
a public controversy is more than simply a “controvers[y] of interest to the public.”
Firestone, 424 U.S. at 454, 96 S. Ct. at 965. A court may also look at whether “the
press was covering the debate, reporting what people were saying and uncovering
facts and theories to help the public formulate some judgment.” McLemore, 978
S.W.2d at 572. 
          To determine whether an individual had more than a trivial or tangential role
in the controversy, a court should consider: (1) whether the plaintiff actively sought
publicity surrounding the controversy; (2) whether the plaintiff had access to the
media; and (3) whether the plaintiff voluntarily engaged in activities that necessarily
involved the risk of increased exposure and injury to reputation. McLemore, 978
S.W.2d at 572–73. As to this requirement, the Texas Supreme Court has noted, “By
publishing your views you invite public criticism and rebuttal; you enter voluntarily
into one of the submarkets of ideas and opinions and consent therefore to the rough
competition in the marketplace.” Id. at 573 (quoting Dilworth v. Dudley, 75 F.3d
307, 309 (7th Cir. 1996)). 
          A person does not become a public figure merely because he is “discussed”
repeatedly by a media defendant or because his actions become a matter of
controversy as a result of the media defendant’s actions. See Hutchinson v. Proxmire,
443 U.S. 111, 135, 99 S. Ct. 2675, 2688 (1979) (noting that the subject of plaintiff’s
writings became matter of controversy only as consequence of defendant’s action and
proclaiming that, “[c]learly, those charged with defamation cannot, by their own
conduct, create their own defense by making the claimant a public figure.”). Even
engaging in criminal conduct does not make make a person a limited-purpose public
figure. Wolston, 443 U.S. at 168; 99 S. Ct. at 2708. Rather, a defamation defendant
must show that the plaintiff “relinquished. . . his interest in the protection of his own
name” by “engag[ing] the attention of the public in an attempt to influence the
resolution” of “an[] issue of public concern.” Id. at 168; 99 S. Ct. at 2707–08.           Reviewing the evidence at summary judgment in the required light—taking the
evidence that is favorable to Wade as true, indulging every inference in his favor, and
resolving any doubts in his favor—we conclude that appellants did not establish as
a matter of law that Wade is a limited-purpose public figure. 
          Firstly, the evidence does not support a finding that there was any “public
controversy,” involving “people discussing a real question,” “the resolution of which
was likely to impact persons other than those involved in the controversy.” 
Appellants cite to their own prior opinion columns in the Star in which they
“grouched and groaned” about Chief Brady, but the mere fact that appellants (and no
other press) chose to write and publish opinion columns about Chief Brady is merely
evidence of appellants’ “concern,” not a “public” discussion of a “real question.” 
Likewise, the fact that “Chief Deputy Brady . . . knew that his actions . . . would be
controversial and likely the subject of public interest,” and that he and the deputies
made audiotapes, is not evidence that a controversy already existed in which the
“public” was “actually discussing a specific question.” See McLemore, 978 S.W.2d
at 572. The mere fact that some issue may become the subject of public discussion
is not evidence that a specific question is already being discussed by the public. 
Finally, appellants’ citation to testimony from the deputies regarding “gossip around
the office”—about the fact that Wade had been ticketed and about the term “roadside
suppression hearing” (the latter which all three deputies recalled hearing only after
the Article was published)—and the DPS trooper’s personal feelings about Chief
Brady’s actions and his sense of “pressure” after the DPS stop, do not establish as a
matter of law that the “public” was “actually discussing” a “real” and “specific
question.” McKinnon’s testimony that “everybody kind of questioned why we were
having these meetings,” while evidence of a public discussion of a specific question,
at least among sheriff’s department personnel, does not involve a question whose
resolution was likely to impact persons other than those specifically involved (the
three deputies).
          Moreover, even assuming the existence of a “public controversy” regarding the
alleged “roadside suppression hearings” and Chief Brady’s actions relative to the
expunction order,  appellants have not proven, as a matter of law, that Wade was a
limited-public figure as to this particular controversy. Appellants argue that the fact
that Wade “is the son of the Chief Deputy” causes him to be “the subject of public
scrutiny” and that his various interactions with the law such as being handcuffed a
week after the MIP stop by the DPS trooper, his calling of his father when someone
stole his cell phone almost two years prior to the MIP stop (when Wade was
apparently 16 years old), and his coming home “crying” to his father after the MIP
stop, therefore constituted voluntary engagement in activities that “necessarily
involved the risk of increased exposure and injury to reputation.” Appellants also
mention Wade’s defense of himself at the trial on the MIP ticket and his subsequent
petition for an expunction. Appellants assert that, as a result of these actions, Wade
became a limited-purpose public figure.
          However, the mere fact that Wade’s father is a public official and, thus, that
Wade’s behavior might be more “newsworthy” than a teenager whose father was not
a public official, does not mean that any alleged misbehavior in which he might have
engaged made Wade a limited-purpose public figure with respect to the particular
controversy at issue in this litigation. “A libel defendant must show more than mere
newsworthiness to justify application of the demanding burden of [actual malice].” 
Wolston, 443 U.S. at 167–68, 99 S. Ct. at 2707. It is not enough that the “son of the
Chief Deputy” generally engaged in acts that “would generate attention and
discussion”; rather, the voluntary acts would have had to be “with respect to this
controversy”,


 in an attempt to influence the resolution of the public questions at
issue in the controversy. See id.; see also Gertz., 418 U.S. at 345, 352, 94 S. Ct. at
3009, 3013; McLemore, 978 S.W.2d at 573. 
          The evidence at summary judgment does not support a finding that Wade
“thrust [himself] to the forefront” of that “particular public controvers[y] in order to
influence the resolution of the issues involved. . . . [i]nvit[ing] attention and
comment,” or “inject[ed] himself or [was] drawn into [that] particular public
controversy . . . . assum[ing] special prominence in the resolution of public
questions,” or “thrust himself into the vortex of [a] public issue . . . [or] engage[d] the
public’s attention in an attempt to influence its outcome.” Gertz, 418 U.S. at 345,
351, 352, 94 S. Ct. at 3009, 3013. Wade did not “thrust himself” into any controversy
that might have arisen from his father’s actions in response to the MIP ticket and did
not seek to influence the resolution of any public questions arising from any such
controversy; the only actions Wade took after the MIP ticket that related in any way
to such “controversy” were actions to defend himself in court at the trial on the ticket
and to petition for, and receive, an expunction. However, Wade’s use of judicial
processes did not “thrust” him to the “forefront” or “inject” him into the “vortex” of
“a public controversy” or “public issue” in order to “influence the resolution” of
“public questions,” nor did it constitute a “voluntary engagement” in activities that
involved the risk of increased exposure and injury to reputation. See Firestone, 424
U.S. at 454–55, 96 S. Ct. 965–66 (holding that use of judicial process to litigate
divorce did not make plaintiff a public figure and noting that such action was no more
voluntary than that of defendant called upon to defend his interest in court). 
          Appellants invite us to create a new category of limited-purpose public figures
in Texas—an “involuntary” limited-purpose public figure, who becomes a public
figure “when his or her conduct is related in an integral and meaningful way to the
conduct of a public official”—and cite to a decision from an intermediate Tennessee
appeals court for support of this proposition. See Lewis v. Newschannel 5 Network,
L.P., 238 S.W.3d 270, 298– 300 (Tenn. Ct. App. 2007). We observe that appellants
did not make this argument to the trial court, or even to this Court until their reply
brief. We further note that the cited authority is not binding on this Court, follows
prior Tennessee Supreme Court authority setting out a different standard than Texas’s
for determining when a person is a limited-purpose public figure, and relies heavily
on reasoning from a prior United States Supreme Court opinion that the Court
subsequently rejected in Gertz. Finally, we recognize that applying Lewis’s reasoning
would require us to depart from the well-established standard set out by the Texas
Supreme Court in McLemore. See McLemore, 978 S.W.2d at 571–73; see also
Trover v. Paxton Media Group, L.L.C., No. 4:05CV-014-H, 2007 WL 4302088, at
*3–6 & fn. 5 (W.D. Ky. Dec. 5, 2007) (discussing Lewis and cases with similar
reasoning in light of Gertz and its progeny, and concluding that different standard,
similar to that used in McLemore, used “better approach”). We decline appellants’
invitation.
          Having held that Wade was not a limited-purpose public figure, we reject
appellants’ contention that Wade was required to prove actual malice as an essential
element of his cause of action.


 We therefore need not address whether Wade
presented evidence of actual malice in order to defeat a summary judgment. We hold
that appellants were not entitled to either a no-evidence or a traditional summary
judgment on the ground that Wade was required to present evidence of actual malice
because he was a limited purpose public figure and failed to do so, or on the basis
that, because he was a limited purpose public figure, Wade’s cause of action failed
because appellants negated the essential element of actual malice as a matter of law. 
          We overrule issues four, five, and six. 
C.      Non-actionable opinion 
          In their seventh issue, appellants assert that a particular statement in the Article
—namely, “In the DPS videotape viewed by the Star and then later obtained through
the Freedom of Information Act, Wade Brady was so unruly and intoxicated that the
Trooper had to handcuff him and place him in the backseat of the police car for
safety”—was an assertion of opinion, not of fact, and therefore, not actionable as
defamation. See Bentley, 94 S.W.3d at 579–81 (discussing test for determining
actionable statements of fact versus constitutionally protected expressions of
opinion). However, appellants did not present this ground to the district court for its
review of their second summary judgment motion, and the district court did not rule
on this ground. While appellants did list this argument as a ground for summary
judgment in their second motion for summary judgment, and the associate judge ruled
on it, appellants did not raise the argument in district court when they appealed the
associate judge’s order and requested de novo review. Rather, appellants presented
in their notice of appeal to the district court only their summary judgment grounds of
falsity, substantial truth, and actual malice. The district court, in its order ruling on
appellants’ second motion for summary judgment, noted that it considered “all of the
issues raised in [appellants’] Notice of Appeal [from the associate judge’s ruling]”
and listed them specifically. The district court then ruled on those specific grounds,
denying appellant’s second motion for summary judgment “on the issues raised on
appeal,” namely, substantial truth, material falsity, and actual malice. The district
court, whose ruling we are reviewing on appeal,


 never considered “non-actionable
opinion” as a basis for summary judgment in its ruling at issue in this appeal. We
therefore may not review appellant’s complaint that the district court failed to grant
summary judgment on a ground not presented to it or considered by it. See Travis,
830 S.W.2d at 100 (holding that appellate court may only review issues “actually
presented to and considered by the trial court”).


 
          We overrule appellants’ seventh issue.
D.      Appellants’ Malooly issue
          Having overruled all of appellants’s specific complaints regarding the denial
of summary judgment, we overrule appellants’ first issue broadly complaining of the
denial of summary judgment.

Conclusion               We affirm the trial court’s denial of appellants’ no-evidence and traditional 
motions for summary judgment and remand this case to the trial court for further
proceedings.
 
 
 
 
Tim Taft
Justice
 
Panel consists of Justices Keyes, Alcala, and Taft.