William **DILWORTH**, Plaintiff–Appellant,

v.

Underwood **DUDLEY**, Robert G. Bottoms, and Donald J. Albers, Defendants–Appellees.

No. 95–2282.

United States Court of Appeals, Seventh Circuit.

Submitted Nov. 14, 1995.

Decided Jan. 29, 1996.

Rehearing Denied March 18, 1996.

William Dilworth, Beloit, WI, pro se.

Arthur J. Vlasak, Richard G. Kalkhoff, Vlasak, Britton & Konkel, Milwaukee, WI, for Underwood Dudley and Robert G. Bottoms.

Charles H. Bohl, Milwaukee, WI, Curtis A. Paulsen, Whyte Hirschboeck Dudek, Milwaukee, WI, for Donald J. Albers.

Before POSNER, Chief Judge, and FAIRCHILD and RIPPLE, Circuit Judges.

POSNER, Chief Judge.

The district judge dismissed this suit for failure to state a claim. Fed.R.Civ.P. 12(b)(6). The only colorable issue presented by the appeal is whether the judge erred in dismissing the plaintiff's defamation claim, which is governed, the parties agree, by the common law of Wisconsin. In 1992 the Mathematical Association of America published a book by defendant Underwood Dudley, a professor of mathematics at DePauw University in Indiana, entitled *Mathematical Cranks*. One of these "cranks" is the plaintiff, William Dilworth, an engineer who (the complaint alleges) has published a half dozen articles in mathematics journals. One of these articles, "A Correction in Set Theory," published in 1974 in the *Transactions of the Wisconsin Academy of Sciences, Arts and Letters*, drew Dudley's ire. Dilworth, according to Dudley, "chose to prove that Cantor's diagonal process is a snare and a delusion." "The reply to this argument," writes Dudley, "—which usually elicits an 'Oh' after a few seconds' thought from bright undergraduates—that the list [of the real numbers between 0 and 1] contains only the terminat-

ing decimals and none of the non-terminating ones, might not affect [Dilworth] at all. His article reads as if it is by someone convinced, whose mind is not going to be changed by anything. It is, in two words, a crank, and it is no credit to the state of [Wisconsin]." Earlier in the book Dudley had explained that the spectrum of mathematical cranks runs from those whose behavior "hardly deserves the label of crankery; 'crotchety' or 'slightly eccentric' describes it more accurately" to "people who are convinced that they have the truth, that it is revolutionary, that mathematicians are engaged in a vast conspiracy to suppress it, and that fame and wealth are rightfully theirs and that one day they will have them. Again, 'crank' is not as descriptive as another word—'lunatic' in this case." Dilworth seems to be in about the midpoint of this spectrum—the median "crank" in Dudley's system of classification.

 The complaint alleges that because Dilworth is not a professional mathematician he finds it very difficult to get his articles on mathematics published and being labeled a "crank" will create an additional obstacle. The complaint alleges that Dudley acted with actual malice because he knew, or was reckless in failing to realize, that Dilworth's article explicitly acknowledged the very point— the difference between a rational and irrational number, or in Dudley's terminology a terminating or nonterminating decimal—the overlooking of which caused Dudley to pronounce the article the work of a crank. The allegation of actual malice is necessary because the plaintiff is a public figure. Not, it is true, a "public figure" in the lay sense of the term. Dilworth is an obscure engineer. But anyone who publishes becomes a public figure in the world bounded by the readership of the literature to which he has contributed. *Underwager v. Salter*, 22 F.3d 730 (7th Cir.1994); cf. *Contemporary Mission, Inc. v. New York Times Co.*, 842 F.2d 612, 619 (2d Cir.1988). By publishing your views you invite public criticism and rebuttal; you enter voluntarily into one of the submarkets of ideas and opinions and consent therefore to the rough competition of the marketplace. Cf. *Masson v. New Yorker Magazine, Inc.*, 895 F.2d 1535, 1537 (9th Cir.1989), rev'd on other grounds, 501 U.S. 496, 111 S.Ct. 2419,

115 L.Ed.2d 447 (1991). If Dilworth publishes an article saying that Cantor was wrong, he invites Dudley to publish a book in which he says that Dilworth was wrong in saying Cantor was wrong.

 The district judge granted the motion to dismiss on the ground that the word "crank" is incapable of being defamatory; it is mere "rhetorical hyperbole." This is a well-recognized category of, as it were, privileged defamation. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20, 110 S.Ct. 2695, 2705–06, 111 L.Ed.2d 1 (1990); *National Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1974); *Perry v. Columbia Broadcasting System, Inc.*, 499 F.2d 797 (7th Cir.1974); *Phantom Touring, Inc. v. Affiliated Publications*, 953 F.2d 724, 728 (1st Cir.1992). It consists of terms that are either too vague to be falsifiable or sure to be understood as merely a label for the labeler's underlying assertions; and in the latter case the issue dissolves into whether those assertions are defamatory. If you say simply that a person is a "rat," you are not saying something definite enough to allow a jury to determine whether what you are saying is true or false. If you say he is a rat because ..., whether you are defaming him depends on what you say in the because clause.

 Determining whether a term is capable of being defamatory is a question of law in Wisconsin, *Tatur v. Solsrud*, 174 Wis.2d 735, 498 N.W.2d 232, 233 (1993), and so is amenable to determination on a motion to dismiss, provided that as in this case the complaint sets forth the allegedly defamatory term in its full context. Although the division of responsibilities between judge and jury, and hence the fixing of the boundary between questions of law and questions of fact, is a matter of federal procedural law and therefore governed by federal rather than state law in diversity as in other federal suits, *Desnick v. American Broadcasting Cos.*, 44 F.3d 1345, 1349 (7th Cir.1995), the rule that makes the determination of whether a term is mere "rhetorical hyperbole" a question for the judge strikes us as a sound one that federal courts should follow. See *Mr.*

*Chow of New York v. Ste. Jour Azur S.A.,* 759 F.2d 219, 224 (2d Cir.1985). For in effect the judge is being asked whether a reasonable jury could find the term defamatory, and that obviously is a judgment that cannot be left to the jury. So we must decide whether "crank" is capable of being defamatory, or more precisely whether the highest court of Wisconsin would so hold were it presented with the issue, which it has not been as yet.

■ Among the terms or epithets that have been held (all in the cases we've cited) to be incapable of defaming because they are mere hyperbole rather than falsifiable assertions of discreditable fact are "scab," "traitor," "amoral," "scam," "fake," "phony," "a snake-oil job," "he's dealing with half a deck," and "lazy, stupid, crap-shooting, chicken-stealing idiot." It is apparent from the list that the defamatory capability of these terms cannot be determined without consideration of context. See *Greenbelt Coop. Publishing Ass'n, Inc. v. Bresler,* 398 U.S. 6, 14, 90 S.Ct. 1537, 1542, 26 L.Ed.2d 6 (1970) ("blackmail"); *McCabe v. Rattiner,* 814 F.2d 839 (1st Cir.1987) ("scam"). Each of the terms has both a literal and a figurative meaning and whether it is capable of being defamatory depends on which meaning is intended, a question that can be answered only by considering the context in which the term appears. "Scab," for example, means literally one who is hired to replace a striking worker, but it is also used figuratively, to denote a worker who is not a union supporter. If as in *National Association of Letter Carriers v. Austin, supra,* a person is called a "scab" in a union newsletter because he refuses to join a union, this is not defamation but merely an expression of hostility; the word is obviously being used in its figurative sense. But if a union leader were accused of having been a scab in his youth, this could well be understood to be a literal use of the word and therefore an assertion that he had engaged in conduct that demonstrated his unfitness to be a union leader. And so with "traitor," another word held nondefamatory in *National Association of Letter Carriers v. Austin.* The use of the word in the context of that case was plainly figurative rather than literal, but the word was being used in

its literal sense when Whittaker Chambers called Alger Hiss a traitor. Another example would be calling a person a "lunatic."

"Crank" might seem the same type of word, but we think not. A crank is a person inexplicably obsessed by an obviously unsound idea—a person with a bee in his bonnet. To call a person a crank is to say that because of some quirk of temperament he is wasting his time pursuing a line of thought that is plainly without merit or promise. An example of a math crank would be someone who spent his time trying to square the circle. To call a person a crank is basically just a colorful and insulting way of expressing disagreement with his master idea, and it therefore belongs to the language of controversy rather than to the language of defamation.

This is especially clear where, as in this case, the word is used in a work of scholarship. As we emphasized in the *Underwager* case, judges are not well equipped to resolve academic controversies, of which a controversy over Cantor's diagonal process is a daunting illustration, and scholars have their own remedies for unfair criticisms of their work—the publication of a rebuttal. Unlike the ordinary citizen, a scholar generally has ready access to the same media by which he is allegedly defamed. If Dudley's criticisms of Dilworth are unsound, Dilworth should be able to publish a rebuttal in the same journal in which he published the article that Dudley attacked. The journal would be eager to publish a rebuttal since its own reputation was impugned by Dudley's charges.

We do not suggest that scholars can never maintain a suit for defamation. The *Masson* case is a notable example. If a professor is falsely accused of plagiarism or sexual harassment or selling high grades or other serious misconduct, rather than of having unsound ideas, he has the same right to damages as any other victim of defamation. The case before us is one in which not the character but the ideas of the scholar are attacked.

■ Nor do we go so far as to hold that the word "crank" can never be defamatory. We recall that Dudley defined "crank," and

had he defined it in terms that called into question Dilworth's character or sanity rather than merely his judgment or learning, we would have a different case. We hold only that where one scholar calls another a "crank" for having taken a position that the first scholar considers patently wrongheaded, the second does not have a remedy in defamation.

AFFIRMED.