Matthew M. Steinhausen, doing business as Steinhausen
Home Inspections LLC, appellant, v. HomeServices
of Nebraska, Inc., et al., appellees.
___ N.W.2d ___

Filed January 23, 2015.    No. S-13-1103.

1.  **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower
    court's grant of summary judgment if the pleadings and admitted evidence show
    that there is no genuine issue as to any material facts or as to the ultimate infer-
    ences that may be drawn from the facts and that the moving party is entitled to
    judgment as a matter of law.
2.  ____: ____. In reviewing a summary judgment, an appellate court views the
    evidence in the light most favorable to the party against whom the judgment was
    granted, and gives that party the benefit of all reasonable inferences deducible
    from the evidence.
3.  **Attorney and Client: Actions.** A legal proceeding in which a party is rep-
    resented by a person not admitted to practice law is a nullity and is subject
    to dismissal.
4.  **Attorneys at Law: Attorney and Client.** A licensed member of the Nebraska bar
    must represent a limited liability company in the courts of this state.
5.  **Attorney and Client: Parties: Appeal and Error.** When a layperson appeals
    both in his own behalf and on behalf of a business entity, an appellate court dis-
    misses the appeal as to the entity but considers the merits of the appeal as to the
    errors assigned by the layperson in his own behalf.
6.  **Actions: Pleadings: Parties.** The character in which one is a party to a suit,
    and the capacity in which a party sues, is determined from the allegations of the
    pleadings and not from the caption alone.
7.  **Courts: Actions: Parties: Complaints: Pleadings: Records.** If the capacity in
    which a party sues is doubtful, a court may examine the complaint, the pleadings
    as a whole, and even the entire record.
8.  **Actions: Pleadings: Parties.** When the pleadings show a cause of action by a
    person in his individual capacity, a court may reject words indicating representa-
    tive capacity.
9.  **Libel and Slander: Negligence.** A defamation claim has four elements: (1) a
    false and defamatory statement concerning the plaintiff, (2) an unprivileged pub-
    lication to a third party, (3) fault amounting to at least negligence on the part of
    the publisher, and (4) either actionability of the statement irrespective of special
    harm or the existence of special harm caused by the publication.
10. **Libel and Slander.** A communication is defamatory if it tends so to harm the
    reputation of another as to lower him in the estimation of the community or to
    deter third persons from associating or dealing with him.
11. **Libel and Slander: Proof.** The threshold question in a defamation suit is
    whether a reasonable fact finder could conclude that the published statements
    imply a provably false factual assertion.
12. **Constitutional Law: Libel and Slander.** To distinguish fact from opinion in
    a defamation claim, courts apply a totality of the circumstances test. Relevant

factors include (1) whether the general tenor of the entire work negates the impression that the defendant asserted an objective fact, (2) whether the defendant used figurative or hyperbolic language, and (3) whether the statement is susceptible of being proved true or false.

13. **Actions: Libel and Slander.** Rhetorical hyperbole—language that, in context, is obviously understood as an exaggeration rather than as a statement of literal fact—is not actionable.

14. ____: ____. If a plaintiff asserts claims of both libel and false light invasion of privacy based on the same statement, the false light claim is subsumed within the defamation claim and is not separately actionable.

15. **Torts: Intent: Proof.** To succeed on a claim for tortious interference with a business relationship or expectancy, a plaintiff must prove (1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted.

16. **Torts: Corporations.** Members of a limited liability company cannot, in their own behalf, maintain a claim for tortious interference with the business relationships or expectancies of the company.

17. **Trial: Evidence: Appeal and Error.** In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party.

18. ____: ____: ____. The exclusion of evidence is ordinarily not prejudicial where substantially similar evidence is admitted without objection.

Appeal from the District Court for Lancaster County: ROBERT R. OTTE, Judge. Affirmed in part, and in part reversed and remanded with directions.

Matthew M. Steinhausen, pro se.

Shawn D. Renner, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellee Shelly J. Nitz.

Michael D. Reisbig and Brian D. Nolan, of Nolan, Olson & Stryker, P.C., L.L.O., for appellees HomeServices of Nebraska, Inc., and Woods Brothers Realty.

HEAVICAN, C.J., CONNOLLY, STEPHAN, MCCORMACK, MILLER-LERMAN, and CASSEL, JJ.

CONNOLLY, J.

## I. SUMMARY

Shelly J. Nitz is a real estate agent affiliated with HomeServices of Nebraska, Inc. (HomeServices). Matthew M.

Steinhausen is a home inspector who inspected a house that one of Nitz' clients owned. More than 2 years after the inspection, Nitz sent an e-mail to HomeServices real estate agents and employees stating that Steinhausen was a "[t]otal idiot." Steinhausen, proceeding pro se, sued Nitz and HomeServices, alleging claims of libel, false light invasion of privacy, and tortious interference with a business relationship or expectancy. The district court sustained Nitz' and HomeServices' motions for summary judgment, reasoning that a qualified privilege protected the e-mail and that the evidence failed to show that Steinhausen had a business relationship or expectancy with Nitz or HomeServices. We affirm the court's judgment as it relates to the claims asserted by Steinhausen in his personal capacity. Because Steinhausen's attempt to also prosecute this action for a business entity is a nullity, we reverse, and remand with directions to vacate the judgment as it relates to claims brought for the entity.

## II. BACKGROUND

### 1. Factual Background

HomeServices is a brokerage firm whose business includes real estate sales. HomeServices does business as HOME Real Estate and Woods Brothers Realty, both of which are trade names owned by HomeServices and "not corporate entities." Nitz is a real estate agent affiliated with HomeServices.

Steinhausen began performing home inspections in 1999. After operating the business as a sole proprietorship, Steinhausen formed Steinhausen Home Inspections LLC (SHI) in 2004. Steinhausen is the sole member of SHI and its registered agent. SHI's primary business is home inspections, but it also performs commercial property inspections and offers consulting services.

In 2008, Nitz represented the seller of a home in Seward, Nebraska. A potential buyer exercised her right to a home inspection, and Steinhausen performed the inspection. Nitz testified that some of the items in Steinhausen's report "were unquestionably beyond the scope of a typical home inspection." Nitz felt that Steinhausen's comments on "non-condition related items" were "likely to tear apart transactions when

property condition was not a real issue, to the detriment of a seller."

HomeServices provides its real estate agents with access to a company e-mail network. The network uses "group email lists," or listservs, including the "HRE-HOTSHEET" and "WBR-HOTSHEET" lists (collectively the Hotsheets). The Hotsheets include the e-mail addresses of current HomeServices real estate agents and employees and are accessed through their individual e-mail accounts.

HomeServices' vice president stated that agents use the Hotsheets as a forum to share information and opinions on topics related to the real estate business:

> It is common for HomeServices Sales Associates to use the Hotsheets to send emails to other HomeServices Sales Associates to obtain information, market properties, and discuss current issues or questions on which they share a common interest, for example, questions or comments about particular aspects of real estate transactions, availability of properties and developments, real estate rules, regulations and practices and how they relate to real estate transactions, or questions or comments about vendors who work in the real estate sales community.

Nitz averred that, in her experience, HomeServices agents use the Hotsheets to communicate amongst themselves their opinions of other Realtors and vendors in the real estate business.

On January 14, 2011, Nitz posted a reply to an e-mail on the Hotsheets with the subject "RE: Steinhausen inspections." Nitz' e-mail stated in its entirety: "He did an inspection in Seward for the agent that sold one of my listings. I will never let him near one of my listings ever again!!! Total idiot."

The record shows that at least two other HomeServices agents sent e-mails on the same subject to the Hotsheets before Nitz sent her e-mail. The author of the first e-mail stated, "IN MY OPINION," Steinhausen was not qualified to inspect residential structures. The author of the second e-mail stated that inspections performed by Steinhausen were poor and that Steinhausen addressed issues unrelated to structural soundness.

After Nitz sent her e-mail, another HomeServices agent replied that Steinhausen was "not professional."

Nitz stated that she "did not have any specific facts in mind" when she wrote her e-mail. Nitz did "recall[] having a generally negative impression of . . . Steinhausen and the inspection he conducted" and used the phrase "'total idiot'" to "express that generally negative opinion."

At some point in January 2011, Steinhausen received an anonymous letter in the U.S. mail that included a copy of Nitz' e-mail. Steinhausen testified that the letter had no return address and that he did not know who had sent the letter.

After requesting a retraction from Nitz, Steinhausen filed a complaint with the State Real Estate Commission in February 2011 alleging that Nitz' e-mail violated Neb. Rev. Stat. § 81-885.24(22) and (29) (Cum. Supp. 2010). Section 81-885.24 authorizes the commission to discipline real estate brokers who commit certain unfair trade practices, including, under subsection (22), "[m]aking any substantial misrepresentations" and, under subsection (29), "[d]emonstrating negligence, incompetency, or unworthiness to act as a broker . . . ." Nitz signed a consent order with the commission that determined that she had violated § 81-885.24(29). The commission ordered Nitz to complete 6 hours of ethics courses.

Steinhausen claimed that Nitz' January 14, 2011, e-mail interfered with his business relationships with HomeServices, agents of HomeServices, and prospective clients. In particular, Steinhausen testified that several HomeServices agents dissuaded their clients from contracting with SHI. Steinhausen estimated that he suffered $30,000 per year in lost business following Nitz' e-mail and would continue to suffer the same losses for the next 25 years.

Steinhausen testified that Nitz' e-mail and its aftermath also weighed on him personally. According to Steinhausen, he "was physically ill" after learning about Nitz' e-mail and "went through a period of depression, anger, [and] sadness." Steinhausen testified that he had trouble sleeping but that he had not visited a medical doctor or been diagnosed with depression.

## 2. Procedural Background

Steinhausen—who testified that he was not represented by a lawyer—filed a "Pro Se Civil Complaint" in January 2012, identifying himself as the "Owner / Operator" of "Steinhausen Home Inspections." The caption identified the plaintiff as "MATTHEW M. STEINHAUSEN D/B/A STEINHAUSEN HOME INSPECTIONS, LLC," and the defendants as "HOMSERVICES OF NEBRASKA, INC. and SHELLY J. NITZ and WOODS BROTHERS REALTY." The complaint—stating claims of libel, false light invasion of privacy, and tortious interference with a business relationship or expectancy—appears to allege wrongs committed against both Steinhausen and SHI. For example, the opening sentence states that the "Plaintiff" is "Matthew M. Steinhausen, a small business owner residing in rural Lincoln," and alleges that the defendants "publicly placed the Plaintiff in a false light." The same paragraph, however, contains allegations that Nitz "defamed Steinhausen Home Inspections" and that HomeServices and Woods Brothers Realty "creat[ed] an environment of discrimination towards Steinhausen Home Inspections, LLC." The requested relief includes damages for "economic loss" and "emotional suffering" and an injunction prohibiting HomeServices "from discrimination of Steinhausen Home Inspections."

The defendants filed a joint answer that generally denied the allegations in the complaint. The defendants affirmatively alleged that Nitz' statement was opinion, Nitz' statement was protected by a qualified privilege, and Woods Brothers Realty is a trade name owned by HomeServices and, therefore, not a proper party.

The trial court sustained the motions of Nitz and HomeServices for summary judgment against each of the claims in the complaint. The court noted that Woods Brothers Realty is a "trade name[] and not [a] corporate entit[y]." As to the libel claim, the court held that a qualified privilege protected Nitz' e-mail and that she had not abused the privilege. The court held that the false light claim based on the same e-mail was "'subsumed within the defamation claim.'" For the claimed interference with business relationships or expectancies, the court held that the evidence showed that

Steinhausen did not have a valid business relationship or expectancy with either Nitz or HomeServices.

Steinhausen appealed, and the caption on the cover of his brief identified the appellant as "MATTHEW M. STEINHAUSEN; D/B/A Steinhausen Home Inspections, LLC." The notice of appeal states that the party appealing is "Plaintiff, Matthew M. Steinhausen." The Nebraska Court of Appeals ordered the "Appellant" to show cause why it should not dismiss the appeal because SHI had not appeared by an attorney licensed to practice law in Nebraska. After the parties submitted responsive briefs, the court determined that cause had been shown and that the appeal could proceed. But the court cautioned that Steinhausen "may only proceed 'pro se' with regard to claims on his own behalf as an individual, and not on behalf of Steinhausen Home Inspections, LLC." After the Court of Appeals' order, we moved the appeal to our docket under our statutory authority to regulate the caseloads of the appellate courts of the state.

## III. ASSIGNMENTS OF ERROR

Steinhausen assigns, restated, that the district court erred by determining that (1) Nitz' e-mail was privileged, (2) the privilege was not abused by actual malice, (3) Steinhausen had no valid business relationship or expectancy, (4) the false light invasion of privacy claim was subsumed within the libel claim, and (5) certain exhibits offered by Steinhausen were not admissible. Steinhausen also assigns that the court erred by "not properly applying the tests or elements of 'protected opinion,'" although the court did not decide whether Nitz' e-mail was capable of defamatory meaning.

## IV. STANDARD OF REVIEW

[1,2] We will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.[1] In

---

[1] *deNourie & Yost Homes v. Frost, ante* p. 136, 854 N.W.2d 298 (2014).

reviewing a summary judgment, we view the evidence in the light most favorable to the party against whom the judgment was granted, and give that party the benefit of all reasonable inferences deducible from the evidence.[2]

## V. ANALYSIS

### 1. Steinhausen's Capacity to Appeal

HomeServices argues that "Steinhausen's appeal was made on behalf of only one appellant, the business, as opposed to the business and himself individually."[3] HomeServices concedes that Steinhausen could raise on appeal "claims which he holds on behalf of himself individually," but contends that "[h]is Complaint alleges no harm against him personally . . . ."[4] Because Steinhausen is not licensed to practice law in Nebraska, HomeServices concludes that the "appeal is a nullity and should be dismissed."[5] Steinhausen states in his response to the show cause order that he, and not SHI—which he refers to as "the professional identity for individual home inspector Matthew M. Steinhausen"—is the sole party to the appeal. Steinhausen explains that he merely "included his business name on the complaint to clarify his position as the individual owner / operator of Steinhausen Home Inspections, LLC."[6]

### (a) Representation of a Business Entity by a Layperson

Persons not licensed to practice law in Nebraska are prohibited from prosecuting an action or filing papers in the courts of this state on behalf of another. Neb. Rev. Stat. § 7-101 (Reissue 2012) provides:

> [N]o person shall practice as an attorney or counselor at law, or commence, conduct or defend any action or proceeding to which he is not a party, either by using or

---

[2] Id.

[3] Brief for appellee HomeServices at 35.

[4] Id.

[5] Id.

[6] Reply brief for appellant at 14.

subscribing his own name, or the name of any other person, or by drawing pleadings or other papers to be signed and filed by a party, in any court of record of this state, unless he has been previously admitted to the bar by order of the Supreme Court of this state. No such paper shall be received or filed in any action or proceeding unless the same bears the endorsement of some admitted attorney, or is drawn, signed, and presented by a party to the action or proceeding.

But, under Neb. Rev. Stat. § 7-110 (Reissue 2012), "[p]laintiffs shall have the liberty of prosecuting, and defendants shall have the liberty of defending, in their proper persons." We have explained that the phrase "'in their proper persons'" means "in their own persons."[7]

The prohibition of the unauthorized practice of law is not for the benefit of lawyers.[8] Prohibiting the unauthorized practice of law protects citizens and litigants in the administration of justice from the mistakes of the ignorant on the one hand and the machinations of the unscrupulous on the other.[9]

[3] A legal proceeding in which a party is represented by a person not admitted to practice law is a nullity and is subject to dismissal.[10] An individual can represent himself in legal proceedings in his own behalf, but one who is not an attorney cannot represent others.[11] And the rule that a layperson cannot appear in court in a representative capacity cannot be circumvented by subterfuge.[12]

The prohibition on representation by a layperson applies to entities. For example, we have held that a corporation,[13] a

---

[7] *Niklaus v. Abel Construction Co.*, 164 Neb. 842, 849, 83 N.W.2d 904, 909 (1957).

[8] *State ex rel. Comm. on Unauth. Prac. of Law v. Hansen*, 286 Neb. 69, 834 N.W.2d 793 (2013).

[9] *Id.*

[10] *Id.*

[11] *Waite v. Carpenter*, 1 Neb. App. 321, 496 N.W.2d 1 (1992).

[12] *Niklaus v. Abel Construction Co.*, supra note 7, citing *Bay Bar Ass'n v. Finance System, Inc.*, 345 Mich. 434, 76 N.W.2d 23 (1956).

[13] See *Niklaus v. Abel Const. Co.*, supra note 7.

partnership,[14] and a trust[15] must be represented by a member of the bar. We have never addressed whether the same rule applies to a limited liability company (LLC), which is "a hybrid of the partnership and corporate forms."[16] But other courts have held that LLC's must also be represented in court by a licensed attorney,[17] including LLC's with a single member.[18]

[4] We conclude that a licensed member of the Nebraska bar must represent an LLC in the courts of this state. An LLC is an entity distinct from its members.[19] It has the capacity to sue and be sued in its own name,[20] but like a corporation, an LLC is an abstraction, and "abstractions cannot appear pro se."[21] Furthermore, the right to conduct business as an LLC confers a significant privilege on its members: limited liability.[22] The Legislature's grace "'carries with it obligations one of which is to hire a lawyer if you want to sue or defend on behalf of the entity.'"[23]

We decline to recognize an exception for LLC's with a single member. Because Steinhausen is the sole member of

---

[14] *Anderzhon/Architects v. 57 Oxbow II Partnership*, 250 Neb. 768, 553 N.W.2d 157 (1996).

[15] *Black Acres Pure Trust v. Fahnlander*, 233 Neb. 28, 443 N.W.2d 604 (1989). See, also, *Turbines Ltd. v. Transupport, Inc.*, 19 Neb. App. 485, 808 N.W.2d 643 (2012); *Goodwin v. Hobza*, 17 Neb. App. 353, 762 N.W.2d 623 (2009); *Galaxy Telecom v. SRS, Inc.*, 13 Neb. App. 178, 689 N.W.2d 866 (2004); *Waite v. Carpenter, supra* note 11.

[16] *Lattanzio v. COMTA*, 481 F.3d 137, 140 (2d Cir. 2007).

[17] E.g., *Smith v. Rustic Home Builders, LLC*, 826 N.W.2d 357 (S.D. 2013).

[18] See, *Lattanzio v. COMTA, supra* note 16; *Dutch Village Mall v. Pelletti*, 162 Wash. App. 531, 256 P.3d 1251 (2011). See, also, *U.S. v. Hagerman*, 545 F.3d 579 (8th Cir. 2008); *U.S. v. High Country Broadcasting Co., Inc.*, 3 F.3d 1244 (9th Cir. 1993); *National Ind. Theatre v. Buena Vista Distribution*, 748 F.2d 602 (11th Cir. 1984); *Capital Group, Inc. v. Gaston & Snow*, 768 F. Supp. 264 (E.D. Wis. 1991).

[19] Neb. Rev. Stat. § 21-104(a) (Reissue 2012).

[20] Neb. Rev. Stat. § 21-105 (Reissue 2012).

[21] *Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423, 1427 (7th Cir. 1985). See, also, *U.S. v. Hagerman, supra* note 18.

[22] See Neb. Rev. Stat. § 21-129(a) (Reissue 2012).

[23] *Smith v. Rustic Home Builders, LLC, supra* note 17, 826 N.W.2d at 360.

SHI, it might be true that no other person's financial interest in SHI would be harmed by Steinhausen's lay representation. But a layperson's lack of professional skills and ethical obligations "imposes undue burdens on opposing parties and the courts," and "[t]hese considerations are just as important when the LLC has only one owner."[24] And the limited liability Steinhausen enjoys is no less limited because he is the sole member of SHI.[25] Put simply, having called into being a new juridical person, Steinhausen cannot ignore SHI's separate existence when it suits him.

### (b) Parties to the Appeal

[5] To the extent that Steinhausen appeals on behalf of SHI, the appeal is a nullity. But Steinhausen has the right to prosecute an appeal in his own behalf.[26] When a layperson appeals both in his own behalf and on behalf of a business entity, we have dismissed the appeal as to the entity but considered the merits of the appeal as to the errors assigned by the layperson in his own behalf.[27] So, we must determine whether Steinhausen's appeal is solely for SHI.

Confusion as to the identity of the plaintiff (or plaintiffs) below and the appellant (or appellants) on appeal is apparent on the face of the pleadings and briefs. As noted above, the caption of the "Pro Se Civil Complaint" labeled the plaintiff "MATTHEW M. STEINHAUSEN D/B/A STEINHAUSEN HOME INSPECTIONS, LLC." Steinhausen signed the complaint as the "Owner / Operator" of "Steinhausen Home Inspections." Similarly, the cover of the appellate brief filed by Steinhausen—again identifying himself as the "owner / operator" of "Steinhausen Home Inspections, LLC"—labels the appellant "MATTHEW STEINHAUSEN; D/B/A Steinhausen Home Inspections, LLC." Generally, the designation "[d]oing

---

[24] *Dutch Village Mall v. Pelletti, supra* note 18, 162 Wash. App. at 534, 256 P.3d at 1252. See, also, Annot., 8 A.L.R.5th 653 (1992).

[25] See *Dutch Village Mall v. Pelletti, supra* note 18.

[26] See § 7-110.

[27] See *Anderzhon/Architects v. 57 Oxbow II Partnership, supra* note 14. See, also, *Goodwin v. Hobza, supra* note 15.

business as," or "d/b/a," "precedes a person's or business's assumed name."[28]

[6-8] But we do not restrict our inquiry to the titles of the complaint and the appellant's brief. The character in which one is a party to a suit, and the capacity in which a party sues, is determined from the allegations of the pleadings and not from the caption alone.[29] If the capacity in which a party sues is doubtful, a court may examine the complaint, the pleadings as a whole, and even the entire record.[30] And, when the pleadings show a cause of action by a person in his individual capacity, a court may reject words indicating representative capacity.[31]

Here, Steinhausen argues that he is the sole appellant whereas the defendants argue that SHI is the sole appellant. Both Steinhausen and HomeServices note that the pleadings and briefs have consistently referred to a single "plaintiff" or "appellant." But the relief requested in the complaint is inconsistent with a reading that there is a single plaintiff. For example, the complaint prays for an injunction preventing discrimination against SHI and, three paragraphs later, damages for emotional distress. Steinhausen argues that "[l]ibel, libel per se and false light invasion of privacy are all torts affecting individual persons, not businesses."[32] As such, Steinhausen contends that "[t]he claims . . . regarding these aspects of his case are obviously related to his status as an individual, not a business."[33] Steinhausen is correct that a business entity, like an LLC, cannot maintain an action for

---

[28] Black's Law Dictionary 481 (10th ed. 2014).

[29] See *State on behalf of Dunn v. Wiegand*, 2 Neb. App. 580, 512 N.W.2d 419 (1994). See, also, 59 Am. Jur. 2d *Parties* § 14 (2012).

[30] 67A C.J.S. *Parties* § 177 (2013). See, also, *Niklaus v. Abel Construction Co.*, *supra* note 7; *Burke v. Unique Printing Co.*, 63 Neb. 264, 88 N.W. 488 (1901).

[31] 67A C.J.S., *supra* note 30, § 178. See, also, *Andres v. Kridler*, 47 Neb. 585, 66 N.W. 649 (1896); *Thomas v. Carson*, 46 Neb. 765, 65 N.W. 899 (1896).

[32] Reply brief for appellant at 14.

[33] *Id*.

invasion of privacy.[34] But a business entity may maintain a defamation action if the publication directly relates to its business, property, or credit.[35] Furthermore, the same communication might in some cases defame both the business entity and an individual owner.[36]

After examining the pleadings, briefs, and record as a whole, we conclude that Steinhausen has prosecuted this action and attempted to appeal for both himself and SHI. Because his appeal on behalf of SHI is a nullity, we dismiss it. We will consider only the errors assigned by Steinhausen as they relate to claims he could make in his own behalf.

## 2. Defamation

On appeal, Nitz argues that the court should have determined whether her statement was capable of defamatory meaning before deciding whether it was privileged. Nitz contends that "[i]n today's parlance, 'idiot' is merely a subjective pejorative term."[37] Nitz argues that in the context of the Hotsheets—which she refers to as a place for HomeServices agents to "express their opinions without pulling punches"[38]—the phrase "total idiot" is not "a factual statement that [Steinhausen] is mentally defective."[39] Steinhausen responds that "[i]diocy is verifiable" and "can be defined and proved."[40] He notes that "idiot" is defined in one dictionary as "a stupid person or a mentally handicapped person" and asserts that he "is neither stupid nor mentally handicapped."[41]

[9,10] In the ordinary case, a defamation claim has four elements: (1) a false and defamatory statement concerning the

---

[34] See, 77 C.J.S. *Right of Privacy and Publicity* § 43 (2006). See, also, Neb. Rev. Stat. § 20-201 (Reissue 2012).

[35] 53 C.J.S. *Libel and Slander; Injurious Falsehood* § 172 (2005).

[36] See *id*.

[37] Brief for appellee Nitz at 26.

[38] *Id*. at 21.

[39] *Id*. at 26.

[40] Reply brief for appellant at 6.

[41] *Id*. at 7.

plaintiff, (2) an unprivileged publication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.[42] A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.[43]

[11,12] The threshold question in a defamation suit is whether a reasonable fact finder could conclude that the published statements imply a provably false factual assertion.[44] Statements of fact can be defamatory whereas statements of opinion—the publication of which is protected by the First Amendment—cannot.[45] Put another way, "subjective impressions" cannot be defamatory, as contrasted with objective "expressions of verifiable facts."[46] Distinguishing the two presents a question of law for the trial judge to decide.[47] In making this distinction, courts apply a totality of the circumstances test.[48] Relevant factors include (1) whether the general tenor of the entire work negates the impression that the defendant asserted an objective fact, (2) whether the defendant used figurative or hyperbolic language, and (3) whether the statement is susceptible of being proved true or false.[49]

And context is important to whether an ordinary reader would view a statement as one of fact or opinion.[50] In addition

---

[42] See *Moats v. Republican Party of Neb.*, 281 Neb. 411, 796 N.W.2d 584 (2011).

[43] *Id.*

[44] *Wheeler v. Nebraska State Bar Assn.*, 244 Neb. 786, 508 N.W.2d 917 (1993).

[45] See *Moats v. Republican Party of Neb.*, supra note 42.

[46] *K Corporation v. Stewart*, 247 Neb. 290, 297, 526 N.W.2d 429, 435 (1995).

[47] *Moats v. Republican Party of Neb.*, supra note 42.

[48] *Wheeler v. Nebraska State Bar Assn.*, supra note 44.

[49] See *Moats v. Republican Party of Neb.*, supra note 42.

[50] See *K Corporation v. Stewart*, supra note 46.

to the content of the communication, a court looks to the knowledge, understanding, and reasonable expectations of the audience to whom the communication was directed, taking cues from "the broader setting in which the statement appears."[51] Words, particularly the pejorative ones, often have both a literal and figurative meaning.[52] Whether the statement is capable of being defamatory depends on which meaning was used, which can be answered only by examining the context in which the language appears.[53]

[13] As noted, whether the language is hyperbolic is relevant to distinguishing fact from opinion. Rhetorical hyperbole— "language that, in context, was obviously understood as an exaggeration, rather than a statement of literal fact"—is not actionable.[54] In particular, "[t]he ad hominem nature of abusive epithets, vulgarities, and profanities,"[55] which some writers "use to enliven their prose,"[56] indicates that the statement is hyperbole.

Exercises in "name calling"[57] generally fall under the category of rhetorical hyperbole.[58] For example, courts have held that "'idiot,'"[59] "'raving idiot,'"[60] "'[i]diots [a]float,'"[61] and more vulgar variants[62] were rude statements of opinion,

---

[51] *Id*. at 296, 526 N.W.2d at 435. See 50 Am. Jur. 2d *Libel and Slander* § 111 (2006).

[52] See *Dilworth v. Dudley*, 75 F.3d 307 (7th Cir. 1996).

[53] *Id*.

[54] 50 Am. Jur. 2d, *supra* note 51, § 110 at 466.

[55] *Id*., § 111 at 466-67.

[56] *Id*., § 110 at 466.

[57] See *Chang v. Cargill, Inc*., 168 F. Supp. 2d 1003, 1011 (D. Minn. 2001).

[58] See, e.g., *Blomberg v. Cox Enterprises, Inc*., 228 Ga. App. 178, 491 S.E.2d 430 (1997).

[59] *Robel v. Roundup Corp*., 148 Wash. 2d 35, 56, 59 P.3d 611, 622 (2002). Accord *Blouin v. Anton*, 139 Vt. 618, 431 A.2d 489 (1981).

[60] *DeMoya v. Walsh*, 441 So. 2d 1120, 1120 (Fla. App. 1983).

[61] *Cowan v. Time, Inc*., 41 Misc. 2d 198, 198, 245 N.Y.S.2d 723, 725 (N.Y. Sup. 1963).

[62] See *Chang v. Cargill, Inc., supra* note 57.

rather than lay diagnoses of mental capacity. Similarly, courts have held that statements calling the plaintiff "'stupid,'"[63] a "'moron,'"[64] and a "'nincompoop'"[65] were not actionable. Courts have also held that statements potentially referring to the plaintiff's mental health, such as "'raving maniac'"[66]; "'pitiable lunatics'"[67]; "wacko," "nut job," and "'hysterical'"[68]; "'crazy'"[69]; and "crank,"[70] were statements of opinion.

To analyze Nitz' communication, we begin with the context in which it was made. Nitz sent the e-mail to the Hotsheets, which the evidence shows are accessed by HomeServices real estate agents and used, among other purposes, as a forum to express their thoughts on vendors in the real estate community. The reasonable expectations of the audience of Nitz' e-mail (members of the Hotsheets) depend on how members used the forum, particularly whether the Hotsheets were a "place[] that invited exaggeration and personal opinion."[71] At least two other e-mails on the subject of "Steinhausen inspections" preceded Nitz' e-mail. The first, prefaced by "IN MY OPINION," suggested that Steinhausen "should never be allowed to inspect even a dog house." The second called inspections performed by Steinhausen "horrendous."

We next turn to the language of Nitz' e-mail itself. To recap, Nitz stated: "He did an inspection in Seward for the agent that sold one of my listings. I will never let him near

---

[63] *Id*. at 1011.

[64] *Purcell v. Ewing*, 560 F. Supp. 2d 337, 343 (M.D. Pa. 2008).

[65] *Stepien v. Franklin*, 39 Ohio App. 3d 47, 49, 528 N.E.2d 1324, 1327 (1988).

[66] *DeMoya v. Walsh, supra* note 60, 441 So. 2d at 1120.

[67] *Thomas v. News World Communications*, 681 F. Supp. 55, 64 (D.D.C. 1988).

[68] *Lapine v. Seinfeld*, 31 Misc. 3d 736, 752, 754, 918 N.Y.S.2d 313, 326, 327 (N.Y. Sup. 2011).

[69] *Stepien v. Franklin, supra* note 65, 39 Ohio App. 3d at 49, 528 N.E.2d at 1327.

[70] *Dilworth v. Dudley, supra* note 52, 75 F.3d at 310.

[71] *Robel v. Roundup Corp., supra* note 59, 148 Wash. 2d at 56, 59 P.3d at 622.

one of my listings ever again!!! Total idiot." The word "total" means "complete in extent or degree" or "absolute."[72] In some contexts, "idiot" might refer to an objective state of mental capacity and particularly to a person "lacking the capacity to develop beyond the mental age of three or four years."[73] But "idiot" can also refer to "an utterly foolish or senseless person,"[74] and we conclude that Nitz used this meaning. The broad setting of Nitz' statement—along with the superfluous exclamation marks and the adjective "[t]otal"—shows that the statement was hyperbolic rhetoric rather than a reference to arrested intellectual development. Whether a person is "foolish" or "senseless" is a "subjective impression[]" and not an objective "expression[] of verifiable facts."[75] Nitz' e-mail might have been distasteful, but it was a statement of opinion and, therefore, not defamatory.

### 3. False Light Invasion of Privacy

Steinhausen argues that his false light invasion of privacy claim is not subsumed into his libel claim because he "clearly separated libel from false light in his arguments."[76] Nitz and HomeServices respond that Steinhausen cannot maintain a false light invasion of privacy claim in addition to libel because both claims are based on the same statement.

Invasion of privacy as a common-law tort has evolved over the years into several separate torts, one of which is placing a person before the public in a false light. The contours of the tort are now governed by Neb. Rev. Stat. § 20-204 (Reissue 2012), which provides:

> Any person, firm, or corporation which gives publicity to a matter concerning a natural person that places

---

[72] Webster's Encyclopedic Unabridged Dictionary of the English Language 1497 (1989).

[73] *Id*. at 708.

[74] *Id*.

[75] *K Corporation v. Stewart, supra* note 46, 247 Neb. at 297, 526 N.W.2d at 435.

[76] Reply brief for appellant at 9.

that person before the public in a false light is subject to liability for invasion of privacy, if:

(1) The false light in which the other was placed would be highly offensive to a reasonable person; and

(2) The actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

[14] We have held that if a plaintiff asserts claims of both libel and false light invasion of privacy based on the same statement, the false light claim is subsumed within the defamation claim and is not separately actionable.[77] Steinhausen argues that Nitz' e-mail was both a libel and a false light invasion of privacy. The district court did not err by concluding that the claim for the latter was subsumed within the claim for the former.

### 4. Tortious Interference With a Business Relationship or Expectancy

The district court entered summary judgment against Steinhausen's tortious interference with a business relationship or expectancy claim because the record showed that Steinhausen did not have a business relationship or expectancy with Nitz or HomeServices. On appeal, Steinhausen contends that "[t]he business relationship to which [he] is claiming interference is the relationship between [him] and his home inspection clients being discouraged by Nitz and other HomeServices associates not to use [Steinhausen]."[78]

[15] To succeed on a claim for tortious interference with a business relationship or expectancy, a plaintiff must prove (1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or

---

[77] *Moats v. Republican Party of Neb., supra* note 42.

[78] Brief for appellant at 18.

expectancy was disrupted.[79] The interference must impact a valid business relationship or expectancy,[80] and the relationship or expectancy interfered with "must belong to the party asserting the claim."[81]

[16] Members of an LLC cannot, in their own behalf, maintain a claim for tortious interference with the business relationships or expectancies of the LLC.[82] Only the parties to the relationship or expectancy interfered with may bring a tortious interference claim.[83] That a member of an LLC might experience reduced distributions from the LLC if the entity's relationships are interfered with does not convert the claim to one in behalf of the member personally.[84]

Here, the evidence shows that any relationships or expectancies with Nitz, HomeServices, or prospective buyers of home inspection services are the relationships and expectancies of SHI, and not Steinhausen personally. Steinhausen formed SHI in 2004, aware that doing so would allow him to "limit[] [his] liability to the outside world." All of the home inspection reports in the record show that the business relationship was between SHI and the individual home buyers. For example, each report contains a "Home Inspection

---

[79] *Professional Mgmt. Midwest v. Lund Co.*, 284 Neb. 777, 826 N.W.2d 225 (2012).

[80] *Huff v. Swartz*, 258 Neb. 820, 606 N.W.2d 461 (2000).

[81] *Pinnacle Fitness v. Jerry and Vickie Moyes*, 844 F. Supp. 2d 1078, 1098 (S.D. Cal. 2012) (applying Arizona law).

[82] See, *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342 (4th Cir. 2013); *Pinnacle Fitness v. Jerry and Vickie Moyes, supra* note 81; *Baron Financial Corp. v. Natanzon*, 471 F. Supp. 2d 535 (D. Md. 2006). See, also, *Hilderman v. Enea TekSci, Inc.*, 551 F. Supp. 2d 1183 (S.D. Cal. 2008); *Picture Lake Campground v. Holiday Inns, Inc.*, 497 F. Supp. 858 (E.D. Va. 1980); *First Commercial Bank, N.A. v. Walker*, 333 Ark. 100, 969 S.W.2d 146 (1998); *Benton v. Kennedy-Van Saun Mfg. & Eng. Corp.*, 145 N.Y.S.2d 703 (N.Y. Sup. 1955); *Waller v. Waller*, 187 Md. 185, 49 A.2d 449 (Md. 1946); *Sutter v. General Petroleum Corp.*, 28 Cal. 2d 525, 170 P.2d 898 (1946). But see *Resonant Sensors, Inc. v. SRU Biosystems, Inc.*, 651 F. Supp. 2d 562 (N.D. Tex. 2009).

[83] See, e.g., *Baron Financial Corp. v. Natanzon, supra* note 82.

[84] See, e.g., *Painter's Mill Grille, LLC v. Brown, supra* note 82.

Agreement" stating that "Steinhausen Home Inspections LLC, DBA Steinhausen Home Inspections," or simply "Steinhausen Home Inspections," "agrees with customer to provide services related to the review and subsequent inspection report of home and property as requested by customer." In response to Nitz' request for "[a]ll federal and state income tax returns filed by Matthew M. Steinhausen since the creation of [SHI]," Steinhausen produced only the Schedule C or Schedule C-EZ he filed for tax years 2007 to 2012. Steinhausen stated that the request was "overly broad" to the extent it requested "all tax returns filed by Matthew M. Steinhausen, rather than the returns that relate to [SHI]." The sole "Business name" on each of the Schedule C or Schedule C-EZ's is SHI.

Put simply, while there might be evidence of interference with SHI's business relationships or expectancies, the record lacks any evidence that Steinhausen himself had any business relationships or expectancies. As the sole member of SHI, Steinhausen might have experienced reduced distributions from SHI if SHI's business was interfered with. But this does not permit him to maintain an action for interference with SHI's business relationships and expectancies. Steinhausen failed to produce evidence creating a genuine factual dispute regarding the first element of a tortious interference with a business relationship or expectancy claim: A valid business relationship or expectancy.

## 5. EVIDENCE

Steinhausen argues that the court erred by excluding certain exhibits offered by him and a portion of Nitz' deposition. The court sustained the defendants' objections to exhibits 11 through 16 offered by Steinhausen on the ground that they were not among the types of evidence that may be received on a motion for summary judgment under Neb. Rev. Stat. § 25-1332 (Reissue 2008). The court also sustained the defendants' form and foundation objections to a portion of Nitz' deposition. In a footnote to its order, however, the court stated that "[t]he majority of the documents contained in Exhibits 11 through 16 are contained in other exhibits received by the court and have been considered accordingly."

[17,18] In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party.[85] The exclusion of evidence is ordinarily not prejudicial where substantially similar evidence is admitted without objection.[86] In particular, where the information contained in an exhibit is, for the most part, already in evidence from the testimony of witnesses, the exclusion of the exhibit is not prejudicial.[87]

We conclude that the exclusion of exhibits 11 through 16 did not unfairly prejudice a substantial right of Steinhausen. The court received the documents comprising exhibits 11, 12, 13, 15, and 16 elsewhere in the same form or with immaterial formatting differences. Exhibit 14 is the consent order issued by the State Real Estate Commission and signed by Nitz. Witnesses testified as to the type of order issued by the commission, the findings of the commission, and the discipline Nitz received. The handful of facts contained in the "stipulations" portion of the consent order are reflected elsewhere in the evidence.

We also conclude that the exclusion of a portion of Nitz' deposition did not unfairly prejudice a substantial right of Steinhausen. The court excluded 23 lines of Nitz' deposition, in which Steinhausen asked Nitz whether any information in the report for the 2008 Seward inspection was inaccurate or whether he "overlooked or missed" anything. Nitz replied that she did not know. In a portion of Nitz' deposition that the court received, Steinhausen asked Nitz whether she "kn[e]w of any problems with the [Seward property] that were overlooked or unreported by [Steinhausen]." Nitz testified that she did not know. Because the court received substantially similar evidence, the exclusion of a portion of Nitz' deposition did not unfairly prejudice a substantial right of Steinhausen.

---

[85] *Hess v. State*, 287 Neb. 559, 843 N.W.2d 648 (2014). See Neb. Rev. Stat. § 27-103(1) (Reissue 2008).

[86] See *Livingston v. Metropolitan Util. Dist.*, 269 Neb. 301, 692 N.W.2d 475 (2005).

[87] *Durrett v. Baxter Chrysler-Plymouth, Inc.*, 198 Neb. 392, 253 N.W.2d 37 (1977).

## VI. CONCLUSION

Steinhausen has attempted to appeal for both himself and SHI, the LLC of which he is the sole member. Because Steinhausen is not licensed to practice law in Nebraska, his appeal for SHI is a nullity.

As to the errors assigned by Steinhausen in his own behalf, we conclude that the e-mail sent by Nitz stated an opinion and, therefore, was not actionable as libel. The false light invasion of privacy claim was subsumed within the libel claim because both claims were based on the same statement. Finally, Steinhausen's tortious interference claim fails because he did not produce evidence that he, personally, had a valid business relationship or expectancy that could have been interfered with.

In its order sustaining the defendants' motions for summary judgment, the district court stated that "[t]he Plaintiff's complaint is dismissed with prejudice." Steinhausen attempted to prosecute this action both in his own behalf and on behalf of SHI, but his attempt to do so on behalf of SHI was a nullity. Therefore, the judgment as it relates to SHI must be vacated. We affirm the judgment as to Steinhausen in his personal capacity.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.

WRIGHT, J., not participating.