Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/01/2018 09:07 AM CDT

David LeRette, Jr., individually and as owner
of Master Blaster, Inc., appellants and
cross-appellees, v. Steven H. Howard and
Dowd, Howard & Corrigan, L.L.C.,
appellees and cross-appellants.

___ N.W.2d ___

Filed June 1, 2018.    No. S-17-580.

1. **Jurisdiction: Appeal and Error.** Subject matter jurisdiction is a question of law for the court, which requires an appellate court to reach a conclusion independent of the lower court's decision.
2. **Judgments: Verdicts: Appeal and Error.** Review of a ruling on a motion for judgment notwithstanding the verdict is de novo on the record.
3. **Trial: Appeal and Error.** The standard of review of a trial court's determination of a request for sanctions is whether the trial court abused its discretion.
4. **Actions: Parties.** The purpose of Neb. Rev. Stat. § 25-301 (Reissue 2016) is to prevent the prosecution of actions by persons who have no right, title, or interest in the cause.
5. **Actions: Parties: Public Policy.** Neb. Rev. Stat. § 25-301 (Reissue 2016) discourages harassing litigation and keeps litigation within certain bounds in the interest of sound public policy.
6. **Actions: Parties: Standing.** The focus of the real party in interest inquiry is whether the party has standing to sue due to some real interest in the cause of action, or a legal or equitable right, title, or interest in the subject matter of controversy. The purpose of the inquiry is to determine whether the party has a legally protectable interest or right in the controversy that would benefit by the relief to be granted.
7. **Actions: Pleadings: Parties.** The character in which one is a party to a suit, and the capacity in which a party sues, is determined from the allegations of the pleadings and not from the caption alone.

8. **Judgments: Verdicts.** On a motion for judgment notwithstanding the verdict, the moving party is deemed to have admitted as true all relevant evidence admitted that is favorable to the party against whom the motion is directed, and, further, the party against whom the motion is directed is entitled to the benefit of all proper inferences deducible from the relevant evidence.

9. ____: ____. To sustain a motion for judgment notwithstanding the verdict, the court resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw but one conclusion.

10. **Attorneys at Law: Attorney Fees: Conflict of Interest.** An attorney who violates established rules of professional conduct and performs services despite a conflict of interest may not receive compensation for such services.

11. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is clearly against justice or conscience, reason, and evidence, or when the decision unfairly deprives the litigant of a substantial right or a just result.

Appeal from the District Court for Douglas County: Timothy P. Burns, Judge. Affirmed as modified.

Ronald J. Palagi and Donna S. Colley, of Law Offices of Ronald J. Palagi, P.C., L.L.O., and Kathy Pate Knickrehm for appellants.

David A. Domina, of Domina Law Group, P.C., L.L.O., for appellees.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, and Funke, JJ., and Steinke, District Judge.

Steinke, District Judge.
## NATURE OF CASE
The jury found in favor of the plaintiffs on a claim for legal malpractice and fraudulent misrepresentation and awarded $775,000. After trial, the district court overruled the plaintiffs' motion for sanctions and partially granted the defendants' motion for judgment notwithstanding the verdict (JNOV),

reducing the damages to $235,968.78. The plaintiffs appeal, and the defendants cross-appeal, challenging the district court's subject matter jurisdiction.

## BACKGROUND

In November 2013, David LeRette, Jr., individually and as the owner of Master Blaster, Inc., filed a complaint against Steven H. Howard and his law firm, alleging, among other things, that Howard committed legal malpractice and breached his duty as LeRette's attorney when he failed to advise LeRette of his conflicts of interest and when he acted adversely to LeRette's interests. A jury trial was held on the matter in early 2017. From the evidence presented, we adduce the following set of facts.

### MASTER BLASTER'S JUDGMENT
### AGAINST ANDERSON

In 2006, LeRette sold certain assets of his business, Master Blaster, to Johnnie Anderson. Pursuant to the purchase agreement, Anderson executed a promissory note to Master Blaster for $350,000 with 12 percent annual interest. After three payments, Anderson defaulted on the note.

Master Blaster filed suit for the balance owed. During those proceedings, Master Blaster was represented by Sandra L. Maass.

Anderson then filed for bankruptcy. Master Blaster's suit against Anderson was stayed. In the bankruptcy proceeding, Master Blaster challenged the discharge of Anderson's debt to Master Blaster. The bankruptcy court ultimately granted Master Blaster's request after finding that omissions and misstatements in Anderson's schedules and statements of financial affairs were inaccurate, unreliable, and constituted intentional or reckless indifference to the truth. Thereafter, the stay was lifted from Master Blaster's suit against Anderson. In 2009, Master Blaster secured a judgment against Anderson for $470,020.39 plus interest.

### LEGAL MALPRACTICE ACTION AGAINST
### ANDERSON'S BANKRUPTCY ATTORNEYS

LeRette's bankruptcy attorney thought Anderson's bankruptcy attorneys may have been negligent in their representation of Anderson and suggested to LeRette that Anderson could pursue a legal malpractice claim against them in order to generate funds that could be used to satisfy his debt to Master Blaster. Based on this information, LeRette contacted Maass, who told LeRette that she thought her former classmate, Howard, might be able to help.

With LeRette's approval, Maass called Howard to discuss the matter. Howard indicated that he was interested in the case. Thereafter, Maass gave Howard's contact information to LeRette, who then called Howard.

After talking to Howard, LeRette contacted Anderson and asked him if he was interested in pursuing a legal malpractice claim against his bankruptcy attorneys. Anderson indicated that he was, and LeRette and Anderson met at a fast food restaurant to discuss it. According to LeRette, he told Anderson that he would hire the attorney.

LeRette then called Howard and scheduled a meeting in Howard's law office for May 1, 2009. Howard told LeRette to bring Anderson, which he did. At the meeting, Howard advised LeRette and Anderson that any proceeds from the suit would be used to satisfy the judgment against Anderson. Howard advised LeRette not to execute on the judgment against Anderson, because it would make the case more difficult for Howard. LeRette did not execute on the judgment. According to LeRette, Howard told him that he could not be named in the malpractice action, because malpractice suits cannot be assigned. But Howard represented that the suit would be successful and that LeRette would "get [his] money and get paid."

Howard filed the legal malpractice claim against the bankruptcy attorneys in October 2009.

### MEDIATION AND SETTLEMENT
### AGREEMENT

In March 2012, a mediation of the legal malpractice suit against Anderson's bankruptcy attorneys occurred. Howard, LeRette, and Anderson were all present. According to LeRette, he met with Howard before the mediation to discuss what settlement amounts might be acceptable. The mediation ultimately reached an impasse.

Thereafter, the mediator issued a proposal in which he recommended that the parties settle for $350,000, with Anderson to receive $0, LeRette to receive $300,000, and Howard to receive $50,000 for his fees. The proposal was not accepted.

On July 23, 2012, without discussing the matter with LeRette, Howard settled the legal malpractice action for $350,000. Howard deposited the settlement proceeds into his firm's trust account and dispersed $235,964.78 to Anderson, retaining the remaining $114,035.22 in payment of his fees and expenses. Anderson did not pay LeRette, and LeRette never received any of the settlement proceeds.

According to LeRette, he stopped receiving information from Anderson and Howard after the mediation. When LeRette followed up with the malpractice case, he was told that the trial was to occur on October 29, 2012. Sometime later, LeRette learned about the settlement and the payment and filed the suit against Howard and his law firm.

### EVIDENCE OF DAMAGES

At the trial, LeRette sought to prove that Howard's legal malpractice and fraudulent misrepresentations caused him damages.

As evidence of those damages, LeRette called a university finance professor to testify. The witness calculated what Master Blaster's judgment against Anderson would have been worth beginning in April 2009 through February 2017. A document of his calculations was entered into evidence. According to the document, the value of Master Blaster's judgment at the

time of the trial was either $1,209,614 or $1,276,038, depending on whether a penalty was included.

Relevant to the value of Anderson's claim against his bankruptcy attorneys, an offer of judgment filed by Howard was admitted into evidence. In the offer, Anderson offered to accept an entry of judgment against the bankruptcy attorneys in the amount of $1 million.

## JURY VERDICT

At the conclusion of the evidence, the jury was instructed on two theories: legal malpractice and fraudulent misrepresentation. After the case was submitted, the jury returned a general verdict for LeRette and Master Blaster with damages of $775,000.

## DAMAGES REDUCED

After trial, Howard and his law firm filed a motion for JNOV, to alter or amend judgment, and for a new trial. In the motion, Howard and his firm alleged, among other things, that the judgment was not supported by sufficient evidence and that the jury awarded excessive damages. A hearing on the motion was held, and on May 5, 2017, the district court issued an order reducing the damages from $775,000 to $235,968.78, which was the amount Anderson received in the settlement.

In reducing the damages to the amount that Anderson received in the settlement, the district court reasoned:

> There was no evidence adduced at trial that . . . Howard could have obtained a more favorable settlement for Anderson or that he performed deficiently in reaching the settlement. It is clear from the evidence at trial that Anderson was the only one with a legal claim against the bankruptcy attorneys, and he agreed to settle the case for $350,000 in which he received $235,968.78.
>
> The only damages [LeRette and Master Blaster] could have sustained, as a proximate cause of . . . Howard['']s negligence or misrepresentations, was not seeing that LeRette [and Master Blaster] received all or part of the

settlement proceeds received by Anderson. Under the facts presented to the jury, the amount Anderson received would equal the most [LeRette and Master Blaster] could have received as damages. The Court finds, as a matter of law, that this amount was the only damages that [LeRette and Master Blaster] are entitled [to].

## MOTION FOR SANCTIONS

After the trial, LeRette filed a motion for sanctions, requesting that the trial court strike Howard and his law firm's answer, award attorney fees and costs to LeRette and Master Blaster, and disgorge the attorney fees received by Howard and his law firm in the underlying legal malpractice suit. The district court overruled the motion.

On appeal, LeRette and Master Blaster argue that the district court erred in overruling the motion, because the evidence shows that Howard failed to comply with discovery requests and committed fraud upon the court. LeRette and Master Blaster argue that a pattern of misconduct by Howard and his law firm warranted sanctions and that the trial court's failure to impose sanctions constituted an abuse of discretion.

## ASSIGNMENTS OF ERROR

LeRette and Master Blaster assign that the trial court erred in reducing the jury's award of damages and in overruling the motion for sanctions.

Howard and his law firm cross-appeal, assigning that the trial court erred in failing to dismiss LeRette and Master Blaster's complaint for want of subject matter jurisdiction.

## STANDARD OF REVIEW

[1] Subject matter jurisdiction is a question of law for the court, which requires an appellate court to reach a conclusion independent of the lower court's decision.[1]

---

[1] *Deutsche Bank Nat. Trust Co. v. Siegel*, 279 Neb. 174, 777 N.W.2d 259 (2010).

[2] Review of a ruling on a motion for JNOV is de novo on the record.[2]

[3] The standard of review of a trial court's determination of a request for sanctions is whether the trial court abused its discretion.[3]

## ANALYSIS

### Subject Matter Jurisdiction

Before addressing LeRette and Master Blaster's assignments, we first consider Howard and his law firm's assignment regarding subject matter jurisdiction. They argue that because the judgment debt was owned by the corporation Master Blaster and not by LeRette, LeRette was not the real party in interest. Howard and his firm contend that because LeRette was not the real party in interest, he lacked standing to sue, and that therefore, the trial court lacked subject matter jurisdiction.

[4-6] Indeed, Neb. Rev. Stat. § 25-301 (Reissue 2016) requires that except as otherwise provided by statute, all cases are to be brought "in the name of the real party in interest." The purpose of § 25-301 is to prevent the prosecution of actions by persons who have no right, title, or interest in the cause.[4] Section 25-301 also discourages harassing litigation and keeps litigation within certain bounds in the interest of sound public policy.[5] The focus of the real party in interest inquiry is whether the party has standing to sue due to some real interest

---

[2] See *Bellino v. McGrath North*, 274 Neb. 130, 133, 738 N.W.2d 434, 439 (2007) ("[t]o sustain a motion for [JNOV], the court resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw but one conclusion"), and *Hauser v. Nebraska Police Stds. Adv. Council*, 264 Neb. 605, 650 N.W.2d 760 (2002) (questions of law are reviewed de novo on record).

[3] *Malchow v. Doyle*, 275 Neb. 530, 748 N.W.2d 28 (2008).

[4] *Manon v. Orr*, 289 Neb. 484, 856 N.W.2d 106 (2014).

[5] *Id.*

in the cause of action, or a legal or equitable right, title, or interest in the subject matter of controversy.[6] The purpose of the inquiry is to determine whether the party has a legally protectable interest or right in the controversy that would benefit by the relief to be granted.[7]

The crux of Howard and his law firm's jurisdictional argument rests on the premise that Master Blaster was not named a party to this action. A review of the operative pleadings, however, reveals otherwise.

[7] We have held that the character in which one is a party to a suit, and the capacity in which a party sues, is determined from the allegations of the pleadings and not from the caption alone.[8]

Here, the caption of the operative complaint, as well as its body, support that both LeRette and Master Blaster were parties to the action. The caption of the operative complaint identifies the "[p]laintiffs" as "DAVID LERETTE, JR., Individually, and as owner of MASTER BLASTER, INC." We notice that the caption uses the plural form of the term "plaintiff" and that it also lists both LeRette and Master Blaster in capital letters, which is traditionally done with parties. In the body of the operative complaint, under the "STATEMENT OF THE FACTS" heading, Master Blaster was again specifically identified as a plaintiff.

We also conclude that the jury instructions, the verdict form, the amended judgment, and the postjudgment motion for sanctions all support that both LeRette and Master Blaster were parties to the action. Each of these filed documents uses the plural form of the term "plaintiff" and refers to both LeRette and Master Blaster.

---

[6] *Id.*

[7] *Id.*

[8] *Zapata v. McHugh*, 296 Neb. 216, 893 N.W.2d 720 (2017); *Steinhausen v. HomeServices of Neb.*, 289 Neb. 927, 857 N.W.2d 816 (2015).

Because the allegations of the pleadings sufficiently identify Master Blaster as a party plaintiff, Howard and his law firm's argument that this court lacks jurisdiction because this action was not brought by the real party in interest is without merit.

### Reduction of Jury Award

We next consider LeRette and Master Blaster's assignment that the district court erred in partially granting Howard and his law firm's motion for JNOV and reducing the jury's award of damages.

[8,9] On a motion for JNOV, the moving party is deemed to have admitted as true all relevant evidence admitted that is favorable to the party against whom the motion is directed, and, further, the party against whom the motion is directed is entitled to the benefit of all proper inferences deducible from the relevant evidence.[9] To sustain a motion for JNOV, the court resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw but one conclusion.[10]

LeRette and Master Blaster assert that the trial court erred in reducing the damages to $235,968.78, the amount Anderson received in the settlement. He argues that reasonable minds could have concluded that LeRette and Master Blaster were entitled to $775,000. We disagree.

LeRette and Master Blaster's argument is based on the premise that the damages resulting from Howard's legal malpractice are equal to the value of Master Blaster's judgment against Anderson. Such premise would be true if Anderson's legal malpractice claim had gone to trial and been successful. Then, Anderson's damages would include the damages resulting from the bankruptcy attorney's failure to have Master Blaster's judgment discharged.

---

[9] *Bellino, supra* note 2.

[10] *Id.*

However, LeRette and Master Blaster did not present evidence to support a finding that Anderson's malpractice action would have been successful had it proceeded to trial. Nor did they present evidence that Howard was negligent or acted deficiently in securing the $350,000 settlement or that he could or should have secured a greater settlement.

LeRette and Master Blaster did, however, present evidence to support a finding that Howard was negligent in advising LeRette not to execute on the judgment, in representing that LeRette would receive the proceeds, and in cutting LeRette out of the settlement proceeds. With regard to executing on the judgment, the evidence showed that at all relevant times, Anderson had no assets except for various tools and "a partly put together vehicle." Because any damages resulting from the executing advice was minimal, the only damages proximately caused by Howard's negligence or misrepresentations was in not seeing that LeRette and Master Blaster received the settlement proceeds.

[10] Although the district court reduced the award to the amount that Anderson received in the settlement, we modify that amount to include the amount Howard received in the settlement. We so modify the award, because an attorney who violates established rules of professional conduct and performs services despite a conflict of interest may not receive compensation for such services. In *State ex rel. FirsTier Bank v. Mullen*,[11] we explained:

> We do not accept the contention that an attorney can receive fees for representation which from the outset gives the appearance of impropriety and is violative of established rules of professional conduct. An attorney may not recover for services rendered if those services are rendered in contradiction to the requirements of

---

[11] *State ex rel. FirsTier Bank v. Mullen*, 248 Neb. 384, 390, 534 N.W.2d 575, 580 (1995).

professional responsibility and inconsistent with the character of the profession.

It is an established rule of professional conduct that a lawyer may not represent a client if the representation involves a concurrent conflict of interest, unless, among other things, the client is advised of the conflict and consents to it.[12]

Here, we must assume that Howard failed to advise LeRette and Anderson of his conflict of interest. Because a general verdict does not specify the basis for an award, Nebraska law presumes that the winning party prevailed on all issues presented to the jury.[13] One of the issues presented to the jury was that Howard failed to advise LeRette and Anderson of his conflict of interest.

Because Howard violated the rule regarding representations involving conflicts of interest, we conclude that, as a matter of law, Howard is not entitled to compensation for his services in the settlement. Thus, we modify the jury award to include the $114,035.22 that he received for those services.

## MOTION FOR SANCTIONS

[11] Finally, LeRette and Master Blaster claim that the trial court abused its discretion in overruling their postverdict motion for sanctions against Howard and his law firm. An abuse of discretion occurs when a trial court's decision is clearly against justice or conscience, reason, and evidence, or when the decision unfairly deprives the litigant of a substantial right or a just result.[14]

Although the trial court did not explain its reasoning for denying LeRette and Master Blaster's motion for sanctions, we think it likely did so because it found that Howard was

---

[12] See Neb. Ct. R. of Prof. Cond. § 3-501.7.

[13] *Heckman v. Burlington Northern Santa Fe Ry. Co.*, 286 Neb. 453, 837 N.W.2d 552 (2013).

[14] See *Coral Prod. Corp. v. Central Resources*, 273 Neb. 379, 730 N.W.2d 357 (2007).

not acting in bad faith when he sought to protect, based on attorney-client privilege, his files and the confidential information of his client, Anderson. Because we see no abuse of discretion, we find that this assignment is without merit.

## CONCLUSION

For the reasons set forth above, we affirm the district court's partial granting of Howard and his law firm's JNOV, but modify the jury award from $235,964.78 to $350,000.

Affirmed as modified.