Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/07/2019 09:08 AM CDT

Melissa Burke, appellant and cross-appellee,
v. Board of Trustees of the Nebraska
State Colleges, appellee and
cross-appellant.

___ N.W.2d ___

Filed March 15, 2019.    No. S-17-1167.

1. **Immunity: Jurisdiction.** Sovereign immunity is jurisdictional in nature, and courts have a duty to determine whether they have subject matter jurisdiction over a matter. Subject matter jurisdiction is a question of law.

2. **Judgments: Jurisdiction: Appeal and Error.** When a jurisdictional question does not involve a factual dispute, the issue is a matter of law. An appellate court reviews questions of law independently of the lower court's conclusion.

3. **Actions: Colleges and Universities.** An action against the Board of Trustees of the Nebraska State Colleges is an action against the State of Nebraska.

4. **Constitutional Law: Immunity: States.** The sovereign immunity of a state neither derives from nor is limited by the terms of the 11th Amendment to the U.S. Constitution. Rather, a state's immunity from suit is a fundamental aspect of sovereignty.

5. **Statutes: Immunity: Waiver.** Statutes that purport to waive the State's protection of sovereign immunity are strictly construed in favor of the sovereign and against the waiver.

6. ____: ____: ____. A waiver of sovereign immunity is found only where stated by the most express language of a statute or by such overwhelming implication from the text as will allow no other reasonable construction.

7. **Immunity: Waiver: Jurisdiction: Legislature.** Absent legislative action waiving sovereign immunity, a trial court lacks subject matter jurisdiction over an action against the State.

8. **Declaratory Judgments: Immunity: Waiver.** Nebraska's Uniform Declaratory Judgments Act does not waive the State's sovereign immunity.
9. **Actions: Colleges and Universities: Immunity: Waiver: Legislature.** Language in Neb. Rev. Stat. § 85-302 (Reissue 2014) permitting the Board of Trustees of the Nebraska State Colleges to "sue and be sued" is not self-executing, prescribes no terms or conditions under which the board can be sued, and is not an express legislative waiver of sovereign immunity.
10. **Jurisdiction: Appeal and Error.** When a lower court does not gain jurisdiction over the case before it, an appellate court also lacks jurisdiction to review the merits of the claim.

Appeal from the District Court for Dawes County: Derek C. Weimer, Judge. Vacated and dismissed.

Nicholas J. Welding, of Norby & Welding, L.L.P., for appellant.

George E. Martin III, of Baird Holm, L.L.P., for appellee.

Heavican, C.J., Cassel, Stacy, Funke, Papik, and Freudenberg JJ.

Stacy, J.

Melissa Burke began working at Chadron State College in 2007. In April 2016, she was notified her employment contract would not be renewed for the upcoming contract year. Burke filed a declaratory judgment action in district court against the governing body of Chadron State College, alleging she had not been notified of the nonrenewal within the timeframe required by a collective bargaining agreement. The district court dismissed the action on summary judgment, and Burke appeals. We find Burke's action is barred by the doctrine of sovereign immunity, and therefore, we vacate the district court's judgment and dismiss this appeal for lack of subject matter jurisdiction.

## I. FACTS

The underlying facts are largely undisputed, and most have been stipulated by the parties. Burke brought this action against

the Board of Trustees of the Nebraska State Colleges (the Board). The Board is the governing body of Chadron State College, Wayne State College, and Peru State College.[1] The Board was created by article VII, § 13, of the Nebraska Constitution, and its duties and powers are prescribed by the Legislature.[2] The Legislature describes the Board as "a body corporate"[3] and as a "representative" of the State.[4]

In 2007, Burke was hired to work at Chadron State College. At all relevant times, she was a member of a bargaining unit represented by the Nebraska State College System Professional Association. As such, the terms and conditions of her employment were provided in collective bargaining agreements between the association and the Board.

## 1. BURKE'S EMPLOYMENT

Burke entered into yearly employment contracts with the Board for specific positions at Chadron State College. The term of each contract was from July 1 to June 30. As relevant to this case, the collective bargaining agreement requires that association members in their first year of employment must be given notice that their contract will not be renewed 30 days prior to its expiration. Association members in their second year of employment must be given notice 120 days prior to contract expiration, and members in their third and subsequent years of employment must be given notice 180 days prior to contract expiration.

From 2007 to 2011, Burke was an athletic administrative assistant at Chadron State College. From 2011 to 2015, Burke was a compliance coordinator at Chadron State College. In early 2015, Burke requested a review of her job duties, and in March 2015, her job was changed and she began working

---

[1] See Neb. Rev. Stat. § 85-301 et seq. (Reissue 2014 & Cum. Supp. 2018).

[2] See Neb. Const. art. VII, § 13.

[3] § 85-302.

[4] See Neb. Rev. Stat. §§ 81-1370 and 81-1371 (Reissue 2014).

as an associate athletic director. The parties generally dispute whether this change was a reclassification or a transfer. If it was a reclassification, then under the collective bargaining agreement, Burke kept her prior years of service for purposes of notice of nonrenewal. If it was a transfer, then Burke's years of service started over for purposes of notice of nonrenewal. The parties do not dispute the meaning of the terms "reclassification" and "transfer" in the collective bargaining agreement; rather, the dispute is over the underlying facts of Burke's change in employment and whether it amounted to a "reclassification" or a "transfer" under that agreement.

On April 8, 2016, Burke was notified via letter from the president of Chadron State College that her employment contract would not be renewed for the 2016-17 contract year. Her 2015 contract was due to expire on June 30, 2016. Burke believed this notice was untimely, because she understood that her job had been reclassified and that she retained her prior years of service and, per the collective bargaining agreement, was entitled to 180 days' notice that her contract would not be renewed. The Board, however, reasoned that Burke had been transferred in 2015, and not reclassified, and that her years of service for computing notice of nonrenewal started over and she was entitled to only 30 days' notice of nonrenewal.

## 2. Grievance Procedure

The collective bargaining agreement contains a grievance procedure designated as "the exclusive method for resolving grievances concerning the administration of this Agreement." It defines a grievance as a "dispute . . . concerning the interpretation or application of this Agreement." The grievance procedure has several steps, one of which involves an evidentiary hearing before a committee. The grievance procedure culminates with an appeal to the chancellor. Thereafter, any party who is dissatisfied with the chancellor's decision "may seek relief under applicable State or Federal laws" or, if the parties agree, through binding arbitration. The parties agree Burke did

not initiate or exhaust the grievance procedure before filing
this declaratory judgment action in district court.

### 3. DECLARATORY JUDGMENT ACTION

On June 8, 2016, a few weeks before her 2015 employment
contract was to expire, Burke filed what she styled as a declar-
atory judgment action in the district court for Dawes County,
Nebraska. Her complaint alleged the Board had breached the
collective bargaining agreement by failing to timely notify her
in writing of its intent not to renew her employment contract.
The complaint sought a declaration that as a result of the
breach, Burke was entitled to an employment contract for the
2016-17 contract year. The complaint also sought a declaration
that Burke was entitled to "all salary and fringe benefits asso-
ciated with her employment," as well as back pay and conse-
quential damages.

After Burke filed her complaint, the Board moved to dis-
miss. It argued the court lacked subject matter jurisdiction,
because Burke's action was not really seeking a declaration
regarding construction of a contract, but, rather, was seeking
relief for breach of contract. The Board also argued that to
the extent the complaint sought declaratory relief, Burke had
another equally serviceable remedy, namely, an action for
breach of contract. The district court overruled the motion to
dismiss, reasoning it had subject matter jurisdiction over the
declaratory judgment action and had the discretion to enter-
tain it.

While Burke's declaratory judgment action was pending, we
issued our opinion in *Armstrong v. Clarkson College*.[5] In that
case, we held that the "exhaustion of a mandatory grievance
procedure in a contract is a condition precedent to enforcing
the rights under that contract."[6] In response to *Armstrong*, the
Board moved for summary judgment, arguing Burke's action

---

[5] *Armstrong v. Clarkson College*, 297 Neb. 595, 901 N.W.2d 1 (2017).

[6] *Id.* at 633, 901 N.W.2d at 28-29.

was barred because she failed to exhaust the mandatory grievance procedure in the collective bargaining agreement before filing suit.

The district court granted summary judgment in favor of the Board and dismissed Burke's complaint. Burke filed this timely appeal, and the Board cross-appealed. We granted the Board's petition to bypass.

## II. ASSIGNMENTS OF ERROR

All four of Burke's assigned errors challenge the district court's application of *Armstrong* to this case. Burke assigns, reordered and restated, that the district court erred in (1) granting summary judgment in favor of the Board on the basis that Burke failed to exhaust the grievance procedure in the collective bargaining agreement; (2) interpreting *Armstrong* to require, as a matter of law, the exhaustion of a grievance procedure contained in a contract as a condition precedent to bringing an action to enforce the contract; (3) rejecting her argument that requiring exhaustion of a grievance procedure violates the constitutional right to access the courts without delay; and (4) rejecting her argument that requiring exhaustion of the grievance procedure unlawfully infringes on the court's original equity jurisdiction.

On cross-appeal, the Board assigns, restated, that the district court erred in overruling its motion to dismiss, because (1) the court lacked subject matter jurisdiction over the declaratory action and (2) the complaint failed to state a claim upon which relief could be granted.

## III. STANDARD OF REVIEW

[1,2] Sovereign immunity is jurisdictional in nature, and courts have a duty to determine whether they have subject matter jurisdiction over a matter.[7] Subject matter jurisdiction is a question of law.[8] When a jurisdictional question does not

---

[7] *Cappel v. State*, 298 Neb. 445, 905 N.W.2d 38 (2017).

[8] *LeRette v. Howard*, 300 Neb. 128, 912 N.W.2d 706 (2018).

involve a factual dispute, the issue is a matter of law. An appellate court reviews questions of law independently of the lower court's conclusion.[9]

## IV. ANALYSIS

After oral argument, the parties were ordered to file supplemental briefs addressing (1) whether Burke's action is an action against the State and (2) if so, whether the Legislature has enacted any statute waiving the State's sovereign immunity for this action. In their responsive briefs, the parties agree Burke's action against the Board is an action against the State. They disagree, however, as to whether the doctrine of sovereign immunity applies or has been waived by the Legislature.

As a threshold matter, we agree with the parties that Burke's action is one against the State of Nebraska. Her operative complaint names the Board as the only defendant. The Board was created by article VII, § 13, of the Nebraska Constitution, and its duties and powers are prescribed by the Legislature.[10] The Legislature describes the Board as "a body corporate"[11] and as a "representative" of the State.[12] The Nebraska State Treasurer serves as treasurer of the Board,[13] and the Board must report all expenditures to the Governor annually.[14]

[3] We have at times, perhaps imprecisely, characterized the Board as a political subdivision of the State.[15] We also have

---

[9] *Abdouch v. Lopez*, 285 Neb. 718, 829 N.W.2d 662 (2013); *S.L. v. Steven L.*, 274 Neb. 646, 742 N.W.2d 734 (2007).

[10] See Neb. Const. art. VII, § 13.

[11] § 85-302.

[12] See §§ 81-1370 and 81-1371.

[13] § 85-302.

[14] § 85-303.

[15] *Chase v. Board of Trustees of Nebraska State Colleges*, 194 Neb. 688, 235 N.W.2d 223 (1975). See, also, *Brady v. Board of Trustees of Nebraska State Colleges*, 196 Neb. 226, 242 N.W.2d 616 (1976).

compared the Board to the Board of Regents of the University of Nebraska.[16] Most recently, in *Thomas v. Board of Trustees*,[17] we applied the State Tort Claims Act to the Board. That act provides that a "State agency" includes "all departments, agencies, boards, bureaus, and commissions of the State of Nebraska and corporations the primary function of which is to act as, and while acting as, instrumentalities or agencies of the State."[18] Regardless of the precise terminology used historically, it is beyond debate that the Board is an instrumentality of the State and is accountable to the State. As such, an action against the Board is an action against the State.[19]

## 1. SOVEREIGN IMMUNITY
### PRINCIPLES

[4] The 11th Amendment makes explicit reference to the states' immunity from suits "commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."[20] This court has, as a result, sometimes referred to the 11th Amendment when discussing Nebraska's sovereign immunity from suit.[21] However, the sovereign immunity of a state neither derives from nor is limited by the terms of the 11th Amendment.[22] Rather, as we have recognized, a state's immunity from suit is a fundamental

---

[16] *State ex rel. Spire v. Conway*, 238 Neb. 766, 472 N.W.2d 403 (1991).

[17] *Thomas v. Board of Trustees*, 296 Neb. 726, 895 N.W.2d 692 (2017).

[18] Neb. Rev. Stat. § 81-8,210(1) (Reissue 2014).

[19] See, *State ex rel. Rhiley v. Nebraska State Patrol*, 301 Neb. 241, 917 N.W.2d 903 (2018); *Henderson v. Department of Corr. Servs.*, 256 Neb. 314, 589 N.W.2d 520 (1999). See, also, *Davis v. State*, 297 Neb. 955, 902 N.W.2d 165 (2017) (describing Nebraska's Board of Parole as constitutionally created body of state government).

[20] U.S. Const. amend. XI. See *Alden v. Maine*, 527 U.S. 706, 119 S. Ct. 2240, 144 L. Ed. 2d 636 (1999).

[21] See *State ex rel. Rhiley, supra* note 19.

[22] *Alden, supra* note 20; *State ex rel. Rhiley, supra* note 19.

aspect of sovereignty.[23] And a trial court lacks subject matter jurisdiction over an action against the State unless the State has consented to suit.[24]

Neb. Const. art. V, § 22, provides: "The state may sue and be sued, and the Legislature shall provide by law in what manner and in what courts suits shall be brought." Long ago, we held that this provision is not self-executing and that no suit may be maintained against the State unless the Legislature, by law, has so provided.[25] Over time, we have examined the Legislature's limited waivers of the State's sovereign immunity, usually in the context of either the State Tort Claims Act or the Political Subdivisions Tort Claims Act.[26]

[5-7] In doing so, we have found it well settled that statutes that purport to waive the State's protection of sovereign immunity are strictly construed in favor of the sovereign and against the waiver.[27] A waiver of sovereign immunity is found only where stated by the most express language of a statute or by such overwhelming implication from the text as will allow no other reasonable construction.[28] Absent legislative action waiving sovereign immunity, a trial court lacks subject matter jurisdiction over an action against the State.[29] The question, then, is whether the Legislature has waived sovereign immunity for purposes of this declaratory judgment action. Before we directly address this question, we pause to address an argument made by Burke in her supplemental brief.

---

[23] *State ex rel. Rhiley, supra* note 19. See *Jill B. & Travis B. v. State*, 297 Neb. 57, 899 N.W.2d 241 (2017).

[24] *Davis, supra* note 19.

[25] *State ex rel. Rhiley, supra* note 19; *Shear v. State*, 117 Neb. 865, 223 N.W. 130 (1929).

[26] *State ex rel. Rhiley, supra* note 19.

[27] *Id*.; *Amend v. Nebraska Pub. Serv. Comm*., 298 Neb. 617, 905 N.W.2d 551 (2018).

[28] *Id.*

[29] *State ex rel. Rhiley, supra* note 19; *Henderson, supra* note 19.

Burke argues that her declaratory judgment action does not implicate the State's sovereign immunity because, she contends, her suit "is not in essence one for the recovery of money."[30] She relies on *Doe v. Board of Regents*[31] to argue that actions against the State "to compel or restrain state action do not implicate sovereign immunity if such actions do not seek monetary relief,"[32] and she contends that sovereign immunity applies only when an action against the State "requires the expenditure of public funds."[33]

Burke's argument is premised on a fundamental misunderstanding of *Doe* and sovereign immunity principles. In *Doe*, we were addressing a situation not present here—how sovereign immunity applies when a suit is brought against individuals sued in their official capacity as State employees. We recognized the following general rule:

> [A]ctions to restrain a state official from performing an affirmative act and actions to compel an officer to perform an act the officer is legally required to do are not barred by state sovereign immunity unless the affirmative act would require the state official to expend public funds. As the [U.S.] Supreme Court has consistently stated, "'when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.'"[34]

Here, Burke brought the action only against the Board. She did not name as a defendant any state official, whether in an

---

[30] Supplemental brief for appellant at 7.

[31] *Doe v. Board of Regents*, 280 Neb. 492, 788 N.W.2d 264 (2010), *overruled on other grounds, Davis, supra* note 19.

[32] Supplemental brief for appellant at 5.

[33] *Id.*

[34] *Doe, supra* note 31, 280 Neb. at 511-12, 788 N.W.2d at 282, quoting *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 117 S. Ct. 900, 137 L. Ed. 2d 55 (1997).

individual or official capacity. As such, the distinctions iterated in *Doe* are inapplicable here. Because Burke's action against the Board is an action directly against the State, sovereign immunity applies to bar the action, unless the Legislature has waived it.

## 2. No Statute Waives Board's Immunity

It is well settled that statutes purporting to waive the State's protection of sovereign immunity are strictly construed in favor of the sovereign and against the waiver.[35] A waiver of sovereign immunity is found only where stated by the most express language of a statute or by such overwhelming implication from the text as will allow no other reasonable construction.[36] With these key principles in mind, we turn to the parties' arguments regarding waiver of sovereign immunity.

### (a) Uniform Declaratory Judgments Act Does Not Waive Sovereign Immunity

[8] Burke has styled her action as one for declaratory judgment, and the Board correctly points out that Nebraska's Uniform Declaratory Judgments Act[37] does not waive the State's sovereign immunity.[38] Thus, a party who seeks declaratory relief by suing only the State must find authorization for such remedy from a source other than the Uniform Declaratory Judgments Act.[39]

---

[35] *State ex rel. Rhiley, supra* note 19; *Amend, supra* note 27; *Zawaideh v. Nebraska Dept. of Health & Human Servs.*, 285 Neb. 48, 825 N.W.2d 204 (2013).

[36] *State ex rel. Rhiley, supra* note 19; *Amend, supra* note 27; *Jill B. & Travis B., supra* note 23.

[37] Neb. Rev. Stat. §§ 25-21,149 to 25-21,164 (Reissue 2016).

[38] *County of Lancaster v. State*, 247 Neb. 723, 529 N.W.2d 791 (1995); *Riley v. State*, 244 Neb. 250, 506 N.W.2d 45 (1993); *Concerned Citizens v. Department of Environ. Contr.*, 244 Neb. 152, 505 N.W.2d 654 (1993).

[39] *Northwall v. State*, 263 Neb. 1, 637 N.W.2d 890 (2002). See *Zawaideh, supra* note 35.

### (b) § 85-302 Does Not Waive
### Sovereign Immunity

[9] Nor do the statutes creating the state college system and the Board directly address sovereign immunity.[40] Burke points out that § 85-302 provides that the Board, as a body corporate, "may sue and be sued," but, as previously noted, we have not found such language to be sufficient to waive sovereign immunity. Specifically, in *Livengood v. Nebraska State Patrol Ret. Sys.*,[41] we considered whether the State's sovereign immunity had been waived for an action against the Nebraska State Patrol seeking a declaration that retirement annuities had been miscalculated. We noted that under the Nebraska Constitution, "'[t]he state may sue and be sued, and the Legislature shall provide by law in what manner and in what courts suits shall be brought.'"[42] But we reasoned this provision merely permits the State to lay its sovereignty aside and consent to be sued on such terms and conditions as the Legislature may prescribe. We held that language permitting the State to "sue and be sued" is not self-executing, but instead requires the Legislature to take specific action to waive the State's sovereign immunity.[43] Based on this rationale, we find the language in § 85-302 permitting the Board to "sue and be sued" is not self-executing, prescribes no terms or conditions under which the Board can be sued, and is not an express legislative waiver of sovereign immunity.

### (c) State Contract Claims Act
### Does Not Apply

Nor is the State Contract Claims Act[44] a possible source of waiver on this record. Section 81-8,303 of that act specifies

---

[40] See § 85-301 et seq.

[41] *Livengood v. Nebraska State Patrol Ret. Sys.*, 273 Neb. 247, 729 N.W.2d 55 (2007).

[42] *Id*. at 251, 729 N.W.2d at 60.

[43] *Id.* Accord *Cappel, supra* note 7.

[44] Neb. Rev. Stat. §§ 81-8,302 to 81-8,306 (Reissue 2014).

that it does not apply to employment contracts entered into pursuant to the State Employees Collective Bargaining Act,[45] and the contract at issue was entered into pursuant to that act.[46] Thus, we can find no waiver of sovereign immunity for Burke's suit under the State Contract Claims Act.

### (d) § 25-21,206 Does Not Apply

Finally, both parties discuss Neb. Rev. Stat. § 25-21,206 (Reissue 2016), which provides that the State may be sued in "any matter founded upon or growing out of a contract, express or implied, originally authorized or subsequently ratified by the Legislature, or founded upon any law of the state." Burke's action is founded upon or growing out of her contract with the Board, and that contract was founded upon the State Employees Collective Bargaining Act,[47] a law of the state. Both parties suggest the waiver of sovereign immunity under § 25-21,206 could be broad enough to cover an action such as Burke's, but we need not decide that question, because Burke has failed to comply with the requirements of that statute, and thus she cannot rely on it as a potential waiver of sovereign immunity.

Section 25-21,206 contains specific requirements, one of which is that the complaint must comply with the pleading requirements in Neb. Rev. Stat. § 25-21,202 (Reissue 2016). Section 25-21,202 lists five specific allegations that must be included in the complaint and requires that "in all cases," the complaint "shall" set forth:

> (1) the facts out of which the claim originally arose; (2) the action of the Legislature, or of any department of the government thereon, if any such has been had; (3) what person or persons is the owner or are the owners thereof,

---

[45] Neb. Rev. Stat. §§ 81-1369 to 81-1388 (Reissue 2014).

[46] See §§ 81-1370 and 81-1371.

[47] See § 81-1371(6).

or in anywise interested therein; (4) that no assignment or transfer of the same, or any part thereof, or interest therein, has been made, except as stated in the complaint; and (5) that the claimant is justly entitled to the amount claimed therein from the state after allowance of all just credits and setoffs.

Even liberally construed, Burke's complaint does not address the requirements of subsections (4) or (5) in § 25-21,202. In fact, because Burke has consistently taken the position that she is not seeking any monetary amount from the Board in this action, it is questionable whether she could ever plead factual allegations that satisfy § 25-21,202(5).

As noted, statutes that purport to waive the State's protection of sovereign immunity must be strictly construed in favor of the sovereign and against the waiver.[48] Here, § 25-21,206 expressly waives the State's sovereign immunity, but only if the requirements of the statute are met. Burke's complaint does not contain the necessary factual allegations to satisfy § 25-21,202, and therefore she cannot rely on § 25-21,206 to waive the State's sovereign immunity here. And because we conclude that § 25-21,206 does not apply on this record, we need not address the Board's argument that Burke cannot rely on § 25-21,206 because she failed to comply with the presuit procedures of Neb. Rev. Stat. § 81-1170.01 (Reissue 2014).

## V. CONCLUSION

[10] Burke's declaratory judgment action against the Board is an action against the State, and we have not been directed to any statute that serves to waive the State's sovereign immunity. As such, we must find the district court lacked subject matter jurisdiction over Burke's action against the Board.[49]

---

[48] *State ex rel. Rhiley, supra* note 19; *Amend, supra* note 27.

[49] See *State ex rel. Rhiley, supra* note 19.

When a lower court does not gain jurisdiction over the case before it, an appellate court also lacks jurisdiction to review the merits of the claim.[50] We thus vacate the district court's judgment and dismiss this appeal for lack of subject matter jurisdiction.

Vacated and dismissed.

Miller-Lerman, J., not participating.

---

[50] *Id.*